**STATE of Minnesota, Appellant,**

v.

**Welden Harold EGGLER, Respondent.**

**No. CX–85–364.**

Court of Appeals of Minnesota.

July 30, 1985.

Review Denied Sept. 19, 1985.

Hubert H. Humphrey, III, State Atty. Gen., St. Paul, Raymond F. Schmitz, Olmsted Co. Atty., Michael S. Husby, Asst. Co. Atty., Rochester, for appellant.

Charles F. Richards, Rochester, for respondent.

Considered and decided by the court en banc, consisting of POPOVICH, C.J., and FOLEY, WOZNIAK, HUSPENI, LESLIE, NIERENGARTEN and RANDALL, JJ., with oral argument waived.

## OPINION

FOLEY, Judge.

At the omnibus hearing, the trial court suppressed evidence of marijuana, paraphernalia, and receipts seized from defendant's bedroom and living room during execution of a search warrant. We reverse.

## FACTS

Rochester Police Officer John Paul Jones learned from an informant's tip that re-

spondent Welden Eggler was growing marijuana in his apartment. He investigated and observed on two separate occasions a marijuana plant in the kitchen window of respondent's apartment.

An affidavit for a search warrant prepared by Jones contained the following: (1) the names of the officers involved in the investigation; (2) affiant's familiarity as a narcotics officer with marijuana plants; (3) the dates of observation; (4) the address of the apartment; and (5) the affiant's belief that the observed object was in fact a marijuana plant. The magistrate issued a warrant authorizing search and seizure of "marijuana plants and/or harvested marijuana," "any other controlled substances" and "rent receipts, utility bills, correspondence or any other documents verifying the occupancy of the residence by a certain person(s)."

In executing the warrant the officers seized the observed marijuana plant in the kitchen. They thereafter continued the search in the living room and bedroom of respondent's apartment, seizing a marijuana pipe, a bag of green vegetable matter, a tray of paraphernalia and a J.C. Penney's receipt made out to Eggler in the living room and paraphernalia, two plastic bags containing dry marijuana plants and a tax statement in the bedroom. Altogether, approximately six ounces of marijuana were seized.

Eggler was charged with unlawful possession of over 1.5 ounces of marijuana, a felony.

At the omnibus hearing Eggler moved to suppress the items seized. The trial court ordered all evidence seized from the living room and bedroom suppressed because: "The overbroad scope of the search beyond the kitchen tainted the search." The marijuana plant in the kitchen was ruled admissible. The trial court also denied Eggler's motion to dismiss charges for lack of probable cause and bound him over for trial on

the felony charge. The State appeals the suppression order.

## ISSUES

1. Has the State shown that suppression of evidence seized in the bedroom and living room will have a critical impact on the trial?

2. Did the trial court err in its determination that the search warrant did not include evidence seized in the bedroom and living room of respondent's apartment?

## ANALYSIS

■ Before this court can reverse a trial court's pretrial determination, the State must demonstrate "clearly and unequivocally that the trial court has erred in its judgment and that, unless reversed, the error will have a critical impact on the outcome of the trial." *State v. Webber,* 262 N.W.2d 157, 159 (Minn.1977); *State v. Whelan,* 350 N.W.2d 414, 416 (Minn.Ct. App.1984).

■ 1. The trial court's suppression of evidence seized in the living room and bedroom will have a critical impact on the outcome of the trial. The receipt found in the living room and the tax statement found in the bedroom both verify defendant's address as that specified in the search warrant. More importantly, without the marijuana seized from the bedroom and living room the State would be left with only a small amount of marijuana seized in the kitchen as evidence, possession of which could reduce the charge from a felony to a petty misdemeanor.[1]

■ 2. Defendant concedes there was probable cause to issue a search warrant to seize the observed marijuana plant. However, he argues the supporting affidavit contained no facts showing that probable cause existed to search the remainder of the apartment for "any other controlled substances." Thus, he concludes the warrant had to be limited to the plant identified

---

1. The repeated reference in the dissent that the majority is going outside of the record on which to base its decision is mystifying, for the majority opinion is based upon the record, including the search warrant, and the cases applicable thereto.

in the affidavit. This is too narrow a view of the supporting affidavit. The purpose of a supporting affidavit is to provide facts and circumstances from which a magistrate may independently determine whether probable cause exists to issue the warrant. Although a finding of probable cause may not be made on conclusory statements contained in the supporting affidavit, that is not the case here. Sufficient facts were stated in the affidavit to support the officers belief that marijuana was on the premises. *See United States v. Ventresca,* 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965).

■ Defendant contends that the State's reliance on a "bare bones" affidavit flies in the face of the constitutional standard of probable cause. He cites two cases, *People v. McGill,* 187 Colo. 65, 528 P.2d 386 (1974), and *State v. Helmka,* 86 Wash.2d 91, 542 P.2d 115 (1975), with facts strikingly similar to those presented here. In *McGill* and *Helmka,* officers observed marijuana plants growing in apartment windows and thereafter applied for search warrants. In their supporting affidavits were facts identifying the observed plants. In addition, each affidavit contained a conclusory statement that marijuana was being used, kept, sold, or otherwise disposed of at the residences involved. Defendant argues the absence of such a statement in the affidavit here is fatal to a finding that probable cause exists to search his entire apartment. This argument is not persuasive. A close reading of *McGill* and *Helmka* reveals that the factual setting in both affidavits are identical to those in the present case. The mere fact that Officer Jones did not include in his affidavit a conclusory statement similar to those in *McGill* and *Helmka* does not affect its sufficiency which requires facts, not an affiant's unsupported belief to establish probable cause.

■ In performing her neutral and detached function, the magistrate is to arrive at her probable cause determination in a common-sense and practical manner. *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). She is entitled to

draw common-sense and reasonable inferences from the facts and circumstances given. *Id.* at 244, 103 S.Ct. at 2335; *Novak v. State,* 349 N.W.2d 830 (Minn.1984).

■ When a magistrate determines that probable cause exists, a reviewing court, be it trial or appellate, may not thereafter engage in a hypertechnical examination of the affidavit. In *State v. Wiley,* 366 N.W.2d 265 (Minn.1985), the Minnesota Supreme Court stated:

A magistrate's determination of probable cause should be "paid great deference by reviewing courts" and a reviewing court should not review that determination *de novo.* The fourth amendment requires only that the magistrate had a "substantial basis for * * * conclud[ing] that a search would uncover evidence of wrongdoing." *Id.* at 236 quoting *Jones v. United States,* 362 U.S. 257, 271 [80 S.Ct. 725, 736, 4 L.Ed.2d 697] (1960). In reviewing the sufficiency of an affidavit under the totality of the circumstances test, courts must be careful not to review each component of the affidavit in isolation. Even if each component is judged unsubstantial, the components viewed together may reveal in the informant's tip "an internal coherence that [gives] weight to the whole." *Massachusetts v. Upton,* [— U.S. ——, ——] 104 S.Ct. 2085, 2089 [80 L.Ed.2d 721] (1984). Furthermore, the resolution of doubtful or marginal cases should be "largely determined by the preference to be accorded warrants." *Id.,* quoting *United States v. Ventresca,* 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965).

*Id.* at 268.

We conclude here that the supporting affidavit supplied ample probable cause upon which the magistrate could rely in issuing the warrant. It is certainly reasonable to infer, given the fact of an observed marijuana plant, that additional plants or processed marijuana might be present in other rooms of the apartment. As noted by one court, "it seems reasonable to infer that persons who grow illegal marijuana plants do so for a purpose other than the

pursuit of an interest in horticulture." *State v. Helmka* at 93, 542 P.2d at 116. The State is entitled to submit all evidence covered by the warrant at trial and permit the jury to draw such inferences as might reasonably flow from that evidence.[2] The warrant was not overbroad.

## DECISION

The marijuana plant seized from the kitchen as well as all evidence seized in the bedroom and living room of defendant's apartment is constitutionally admissible at trial.

Reversed.

RANDALL, Judge, dissenting.

I respectfully dissent from the majority opinion and would affirm the trial court's suppression of all seized evidence other than the marijuana plant taken from the kitchen.

When respondent moved to suppress the contested evidence and dismiss the felony charge, the trial court requested both parties to submit written arguments. Respondent did so, but the State failed to respond. Only after the trial court issued its suppression order and bound the respondent over for trial on the felony did the State respond by filing this appeal. Under *State v. Soward*, 262 Minn. 265, 266, 114 N.W.2d 276, 278 (1962), arguably, the State has forfeited its right to even have the critical impact issue considered on appeal. However, since the majority has fully reviewed the case, this dissent will likewise address the merits.

The majority agrees the right of the State to appeal pre-trial suppression orders is grounded in Minn.R.Crim.P. 28.04 and that the State must demonstrate:

clearly and unequivocally that the trial court has erred in its judgment and that, unless reversed, the error will have a critical impact on the outcome of the trial.

2. We can discern no reason why the State must assign before trial comparative weights to the marijuana seized in each room of the apartment. If, as we conclude, the warrant is ade-

*State v. Webber*, 262 N.W.2d 157, 159 (Minn.1977); *State v. Whelan*, 350 N.W.2d 414, 416 (Minn.Ct.App.1984).

## I.

### Critical impact

*Webber* sets out twin thresholds, "clear error" and "critical impact," each of which must be reached by the State. The majority improperly goes beyond the record to conclude suppression will have a critical impact. The majority finds the suppressed receipt and tax statement, found in rooms other than the kitchen, critical to verify respondent's address and occupancy as specified in the search warrant. Respondent did not dispute living at 1423½ East Center Street, Rochester, at the omnibus hearing. The residency or occupancy issue was not presented to the district court, not argued by either attorney on the motion to dismiss, nor mentioned in either brief on appeal.

While it is true that one of the essential elements of the crime of felony possession of marijuana is actual or constructive possession of marijuana, it is pure speculation for this court to assume that the place of respondent's residence will be an issue at trial.

That appellate courts decide only issues raised at the trial court level and do not issue advisory opinions based on assumptions concerning future trials is settled:

One of the most basic rules of appellate practice is that a party cannot raise an issue for the first time on appeal.[37] This rule applies to almost every aspect of the proceedings at the trial court level. This rule is so basic that repeating it seems unnecessary.

___

37. *See, e.g., Morton v. Board of Comm'rs.* 301 Minn. 415, 427, 223 N.W.2d 764, 771 (1974).

It is settled law in all jurisdictions that except for jurisdictional challenges, no claimed trial court error may be raised and acted upon at the appellate level if it was not raised and acted

quately supported by probable cause, all evidence seized is admissible at trial. It is the total evidence as part of the total case that is pertinent and not a dissected view of that evidence.

upon during trial, or in a post-trial motion. A failure to ask the trial court to correct the claimed error amounts to its waiver upon appeal.

M. Houts & W. Rogosheske, *supra,* note 5, § 1.09.

Popovich & Niles, *A Practitioner's Guide to Bringing an Appeal in the Minnesota Court of Appeals,* 11 Wm. Mitchell L.Rev. 627, 634 (1985) (Footnote repeated below).

The record before us shows the house is owned by a Charles D. DeVos and rented by Harold W. Eggler, respondent. The record does not reflect whether or not the State ever approached Mr. DeVos to ask the simple question of whether Eggler rented his house during September, 1984. I can think of no reason why the owner of the house would be untruthful if asked that question, and the record supplies none. At the forthcoming trial, respondent cannot be subpoenaed to the stand, but DeVos can.

*If* prior to the suppression hearing, the State had made a claim that the owner was unsure of who his renter during September, 1984, was, or denied that it was respondent, then logically the State could argue that the suppression of rent receipts in Eggler's name has a critical impact on the essential element of who possessed the marijuana plant. The State *did not* and an appellate court *cannot* supply a "critical impact" *de novo.*

The second area of critical impact addressed by the majority opinion repeats the State's argument, made for the first time on appeal and never presented to the trial court, that suppression of the seized marijuana, except for the plant taken in the kitchen, would leave less than 1.5 ounces, and thus restrict the State to charging a petty misdemeanor. Here again, the majority opinion went beyond the record, relying on an unsupported statement in appellant's brief on an issue never raised at the trial court.

At the suppression hearing, neither side offered testimony and both relied upon the search warrant, the application for search warrant, and the supporting affidavit of the police officer. Nothing in this record sets out the respective weights of the different amounts and types of marijuana seized, one (plant) of which came from the kitchen and the other four or five from the bedroom and living room. In its brief, the State claims the plant seized in the kitchen weighed less than 1.5 ounces.

The complaint alleged the total weight of all seized marijuana to be 6.1 ounces as determined by the Bureau of Criminal Apprehension. The complaint does not set out the weight of the marijuana plant taken from the kitchen nor any breakdown of respective weights for the other items seized. Either a breakdown was not done or, if done, not made part of the record.

If the record had provided evidence as to individual weights of the individual pieces of marijuana seized, and showed that the marijuana plant seized from the kitchen was under 1.5 ounces and the other bits of evidence seized in other rooms were needed to get the cumulative weight over 1.5 ounces (felony level), the State would have made the proper record for us to review.

The State did not. In contradiction of the standard of appellate review the majority opinion placed an argument, raised for the first time on appeal, in the same position as evidence presented to the trial court. The sparse record confirms that individual weights for the various drug items seized was not raised as an issue.

After suppressing all marijuana seized except for one plant in the kitchen, the trial court still bound respondent over for trial on the charge of *felony* possession over his objection. Had either the State or defendant presented to the trial court a list of the respective weights of the half dozen pieces of marijuana, and if the weight of the one marijuana plant allowed into evidence had been demonstrably below an ounce and one-half, the trial court would have been obligated to dismiss the felony charge and bind the defendant over for a hearing only on the charge of a petty misdemeanor.

Since the trial court allowed in just the one marijuana plant from the kitchen and still bound defendant over for trial on the charge of felony possession, the only possi-

ble inference is that the State presented no evidence as to respective weights and did not raise weight as an issue.

The record before this court discloses not a shred of *evidence* that the occupancy of respondent at 1423½ East Center Street is in dispute nor that the marijuana plant ruled admissible at the trial is less than 1.5 ounces. Yet, on the question of the need for the renter receipt, the majority opinion gratuitously supplies a "critical impact" which the State did not even raise itself.

On the respective weights of the various items of marijuana seized, the majority opinion rests not on the record but on the last paragraph in the State's appeal brief. That paragraph is reprinted here verbatim since the opening eight words of the State's brief focus on the standard of review problem which the majority opinion creates:

> *While not an issue at the omnibus hearing,* the State accompanies its appeal with the statement that suppression of the evidence seized in the living room and bedroom will have a critical impact on the outcome of the trial because in its absence, possession of the marijuana is not evidenced, * and, more importantly, the State would be left with only a small amount of marijuana, seized in the kitchen as evidence, thus precluding a felony conviction for possession of 6.1 ounces of marijuana. See Minn.Stat. §§ 152.15, Subd. 1(2) and (3) and 152.01, Subd. 16; *State v. Webber,* 262 N.W.2d 157 (Minn. 1977).

(Emphasis added).

If, according to the State, it was not an issue at the omnibus hearing, it cannot be raised before this court for the first time in a conclusionary argument in an appeal brief.

## II.

*Does the record demonstrate that the trial court clearly and unequivocally erred in its suppression?*

The second threshold question of *Webber* is "clear and unequivocal" error. The

search and seizure facts in this case are not in dispute.

The affidavit supporting the search warrant stated in full:

> Affiant is a Narcotics Officer with the Rochester Police Department. On September 14, 1984, affiant was informed that there was what appeared to be marijuana plants in the kitchen of 1423½ East Center Street which is rented by Harold W. Eggler. Affiant went to that residence, looked through an uncovered east window; and observed what he recognized as a marijuana plant from his previous experience and training as a narcotics officer. Afficant and Officer Dybevik returned to the residence on September 18, 1984; looked into the same window; and again observed the same marijuana plants.

The application for the search warrant identified the following items and addresses:

> Marijuana plants and/or harvested marijuana
>
> Any other controlled substances
>
> Rent receipts, utility bills, correspondence or any other documents verifying the occupancy of the residence by certain person(s)
>
> 1423½ East Center Street owned by Charles D. DeVos and rented by Harold W. Eggler

The warrant authorized the search of the premises described in the application as 1423½ East Center Street owned by Charles D. DeVos and rented by Harold W. Eggler for the items listed in the application.

Examining these three documents, the trial court ruled that, since the warrant in question was based on a "bare bones" affidavit, it did not reasonably follow from the observation of a marijuana plant in the kitchen, that marijuana—harvested marijuana—and other controlled substances would be found in the living room, bedroom, and other areas of the apartment.

In its memorandum incorporated into the suppression order, the trial court found

that the "overbroad scope of the search beyond the kitchen tainted the search," thus only the marijuana plant from the kitchen could remain in evidence. All items seized from the living room and bedroom were suppressed.

The majority opinion states that the trial court applied a construction too strict and a review too narrow to the supporting affidavit and search warrant relying on *People v. McGill,* 187 Colo. 65, 528 P.2d 386 (1974) and *State v. Helmka,* 86 Wash.2d 91, 542 P.2d 115 (1975). The majority opinion states that the factual circumstances in the supporting affidavits in both cases are identical to the present case. That is not correct.

The *McGill* court did reverse a trial court suppression order and allow into evidence different items seized throughout a house, but the supporting affidavit, based on an informer's tip, verified a visual observation of three growing marijuana plants in plain view in the window of the dwelling.

A reading of the majority analysis of *McGill* gives support for the trial court in this case. The *McGill* court stated:

The magistrate could reasonably infer from the fact that *three* marijuana plants were growing in the house that there might also be marijuana seeds, stocks and the leaves, as well as the paraphernalia to use it for the purpose for which it was grown. *Irby v. United States,* 114 U.S.App.D.C. 246, 314 F.2d 251 (1963); *United States v. Daniels,* 10 F.R.D. 225 (D.C.N.J.1950); *State v. Ingram,* 251 Or. [324] 325, 445 P.2d 503 (1968).

*Id.* 528 P.2d at 389 (emphasis added).

The court reasoned that from the multiple growing marijuana plants, the magistrate signing the search warrant could reasonably infer that there might be other contraband in the house. In contrast, the affidavit in Eggler described a single marijuana plant. The majority opinion is incorrect in its factual statement that the Rochester police officer learned from an informant that respondent Eggler was *growing* marijuana in his apartment. The supporting affidavit gives no indication that either the informer or the officer observed that Eggler was growing marijuana, merely that they saw a single plant which, through the officer's eye, resembled marijuana.

The inventory from the search, which is in the record, discloses that a single marijuana plant in a vase was found in the kitchen by the east window.

Officer Jones' narrowly drawn affidavit did not state, for instance, that upon information and belief he had reason to believe that, in addition to the kitchen, there was controlled substances or contraband in other rooms of the house. Nor did the affidavit state that upon information and belief, the suspect was a dealer and could be expected to have other contraband concealed throughout the house. Moreover, the affidavit did not state that the identity of the premises' occupant was uncertain and thus a whole house search was necessary to find rent receipts or other correspondence which could identify the occupant.

In short, Officer Jones' affidavit gave no indication of probable cause to believe that there was illegal activity going on in the house which would necessitate a search of any room in the dwelling except the kitchen.

This is not a case where, during a search of the kitchen, Officer Jones observed contraband in other rooms in plain sight. After leaving the kitchen, the officers had to go through boxes and containers in the living room and the bedroom and look in and under things to find what they did. After they left the kitchen, their search rose to the level of a general exploratory search.

General exploratory searches are invalid. *State v. Harris,* 265 Minn. 260, 121 N.W.2d 327 (1963).

The command of search can never include more than is covered by the showing of probable cause. *United States v. Hinton,* 219 F.2d 324 (7th Cir.1955).

The majority cites *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527

(1983) for the proposition that the magistrate should arrive at a probable cause determination in a common sense and practical manner and is entitled to draw common sense inferences from the facts and circumstances given. However, a later Supreme Court case, *United States v. Leon,* — U.S. —, — 104 S.Ct. 3405, 3417, 82 L.Ed.2d 677 (1984) (citing *Gates* ) states:

> [R]eviewing courts should not defer to a warrant based on an affidavit that does not 'provide the magistrate with a substantial basis for determining the existence of probable cause.'

The trial court determined the search was overbroad. The court noted "[i]t does not reasonably follow from the observation of a marijuana plant in a kitchen that marijuana, harvested marijuana, and other controlled substances will be found in the living room, bedroom, and other areas of the apartment." This finding is not clearly and unequivocally wrong.

The "mere presence of a growing marijuana plant does not grant the police the right to make an exploratory search of everything that is contained within a house." *People v. McGill,* 187 Col. 65, 528 P.2d 386, 391 (1974) (Erickson, J., dissenting). In fact, here the affidavit does not even indicate the observed marijuana was a *growing* plant. "It is unreasonable to infer from the existence of one growing marijuana plant that the additional drugs and paraphenalia listed in the search warrant were present in the house." *Id.*

In both *McGill* and *Helmka,* the supporting affidavits disclosed observation of *multiple* growing marijuana plants along with affiants' conclusions that, based on sighting multiple plants, marijuana was being used, kept, sold and otherwise disposed of at that address. Both courts found from those additional facts in the supporting affidavits that a magistrate could reasonably infer that additional processed plants of marijuana might be present elsewhere on the premises. The *Helmka* court went on to state, and I agree, that the facts of each case must be evaluated on a case-by-case

basis and that general exploratory searches will never be authorized.

In this case, I do not find that the trial court was clearly and unequivocally wrong in suppressing the items seized from the bedroom and the living room.

As stated above, not only did the State not show that the trial court suppression ruling would have a critical impact on the trial, but it also did not raise that issue prior to this appeal. The majority opinion has gratuitously supplied it.

I would affirm the trial court.

POPOVICH, C.J., joins in the dissent of RANDALL, J.