**STATE of Minnesota, Appellant,**

v.

**Leonard Emil KAHN, Respondent.**

No. CX–96–1168.

Court of Appeals of Minnesota.

Oct. 29, 1996.

Hubert H. Humphrey, III, Attorney General, St. Paul, for Appellant.

Raymond F. Schmitz, Olmsted County Attorney, David S. Voigt, Assistant County Attorney, Rochester, for Appellant.

Steven J. Meshbesher, Meshbesher, Birrell & Dunlap, Ltd., Minneapolis, for Respondent.

Considered and decided by AMUNDSON, P.J., and HUSPENI and RANDALL, JJ.

## OPINION

HUSPENI, Judge.

Appellant State of Minnesota charged respondent Leonard Kahn with felony possession of marijuana based on evidence seized pursuant to a warrant from respondent's residence. The district court, in granting respondent's motion to suppress, found that the issuing judge did not have probable cause to issue the warrant to search respondent's residence. The district court also refused to apply a "good faith" exception to the exclusionary rule. Because the state has not demonstrated that the omnibus court erred in finding that the warrant application failed to demonstrate probable cause to search respondent's residence and because a "good faith" exception does not apply to the exclusionary rule in Minnesota, we affirm.

## FACTS

On February 22, 1996, the Olmsted County Sheriff's Office was informed that respondent had been arrested in Hennepin County after purchasing cocaine. Law enforcement prepared an application for a warrant to search respondent's home and outbuildings in Olm-

sted County. The affidavit to the warrant application stated:

> Your affiant is a Detective with the Olmsted County Sheriff's Office, currently assigned to the South East Minnesota Narcotics Task Force. On 2–22–95, your affiant was informed by Agent Michael Perry of the Bureau of Criminal Apprehension that at approximately 1715 hours, a subject identified as Leonard Kahn was stopped at Lake Street and Cedar Avenue in Minneapolis. Kahn was driving a lease vehicle bearing Minnesota license number 387–KEK. Also in the vehicle was passenger identified as Ted Ohm. A search of the vehicle and occupants was completed after the stop and approximately one ounce of cocaine was found on the person of Leonard Kahn. When questioned by authorities as to the ownership of the cocaine, Ohm stated that anything in Kahn's possession is his and that he, Ohm was just along for the ride.
>
> Your affiant knows through training and experience that an ounce of cocaine is considered more [than] that for personal use and indicates that the person possessing that quantity normally sells the drug in smaller quantities.
>
> Your affiant was informed that the residence of Kahn is Box 85, Elgin, MN. Your affiant checked with Wabasha County Sheriff's office and was informed that the property is located in Olmsted County with an address of * * * Elgin, MN. Your affiant checked with Peoples Coop and found that the person subscribing to the service at that address is Leonard Kahn.
>
> Your affiant requests a nighttime search warrant outside the hours of 7:00 a.m. and 8:00 p.m. to search the premises and all out buildings located at [address] Elgin, MN for items listed in Attachment 1.

The issuing judge signed the warrant to search respondent's residence. Officers executed the warrant and recovered approximately 399 grams of marijuana from an outbuilding on the premises.

The state charged respondent with felony possession of marijuana. At the omnibus hearing, respondent argued that the search warrant application did not demonstrate probable cause to search his residence, and the district court agreed.

## ISSUES

1. Has the state demonstrated that the omnibus court erred in finding that the search warrant application failed to establish probable cause for issuing the warrant?

2. Did the omnibus court properly deny the application of a "good faith" exception to the exclusionary rule?

## ANALYSIS

■ Before this court can reverse a district court's pretrial determination, the state must demonstrate

> clearly and unequivocally that the trial court has erred in its judgment and that, unless reversed, the error will have a critical impact on the outcome of the trial.

*State v. Eggler*, 372 N.W.2d 12, 14 (Minn. App.1985), *review denied* (Minn. Sept. 19, 1985) (quoting *State v. Webber*, 262 N.W.2d 157, 159 (Minn.1977)). Because the omnibus court used its decision to suppress the evidence as the basis for dismissing the charges against respondent, we find the ruling had a critical impact on the outcome of the trial in this case. Thus, we review only whether the state has demonstrated that the omnibus court erred in finding that the search warrant application failed to establish probable cause and whether the court properly refused to apply a "good faith" exception to the exclusionary rule.

### I. Did the search warrant application establish probable cause for issuing the warrant?

■ A neutral and detached magistrate reviews a search warrant application and arrives at a probable cause determination in a common-sense and practical manner. *Eggler*, 372 N.W.2d at 15 (citing *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983)). The purpose of the affidavit supporting a warrant application is to provide information from which a magistrate may independently determine whether probable cause exists to issue a search warrant. *Eggler*, 372 N.W.2d at 15.

Probable cause exists if an affidavit sets forth competent evidence sufficient to lead a reasonably prudent person to believe there is a basis for the search. *State v. Bagley,* 286 Minn. 180, 192, 175 N.W.2d 448, 456 (1970). Police officers may rely on training and experience to draw inferences in affidavits, but mere suspicion does not equal probable cause. *State v. Richardson,* 514 N.W.2d 573, 579 (Minn.App.1994); *State v. Skoog,* 351 N.W.2d 380, 381 (Minn.App.1984).

■ Once an issuing court determines that probable cause exists, a reviewing court may not engage in a hypertechnical examination of the affidavit, but should pay great deference to the magistrate's determination. *Eggler,* 372 N.W.2d at 15; *see State v. Wiley,* 366 N.W.2d 265, 268 (Minn.1985). A reviewing court must look to the "totality of the circumstances" and not review each component of the affidavit in isolation. *Wiley,* 366 N.W.2d at 268. We must not look to the information that the police actually had, but rather to the information presented in the affidavit to the magistrate who issued the search warrant. *Novak v. State,* 349 N.W.2d 830, 831 (Minn.1984) (citing *Whiteley v. Warden,* 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971)).

■ In the instant case, the issuing court granted the search warrant based on the following facts: (1) respondent was arrested for possession of one ounce of cocaine in Minneapolis; (2) the affiant, an expert in the field of drug enforcement, stated that he knew "through training and experience that an ounce of cocaine is considered more [than] that for personal use and indicates that the person possessing that quantity normally sells the drug in smaller quantities"; and (3) that respondent resided at the residence to be searched.

The state argues that these facts alone established respondent was a drug dealer and provided a sufficient basis for the issuing judge to find probable cause to grant the warrant to search his residence. The state points to case law in which other courts have not required facts specifically linking drug activity to a dealer's residence because the "nexus," or connection, can be made merely on the basis of affiant-officers' experience

that drug dealers ordinarily keep their supply, records, and monetary profits at home. *See United States v. Pitts,* 6 F.3d 1366, 1369 (9th Cir.1993) ("reasonable nexus" can be inferred from affidavit establishing defendant's ongoing drug activity and place to be searched is his residence); *United States v. Williams,* 974 F.2d 480, 481–82 (4th Cir.1992) (probable cause to find drug paraphernalia in defendant's motel room existed where affidavit established defendant was a drug dealer and had arranged to stay at the motel); *United States v. Terry,* 911 F.2d 272, 275 (9th Cir.1990) (probable cause to search defendant's home existed where evidence from defendant's truck showed he was a major drug trafficker and agent's past experience established that such traffickers "keep drug paraphernalia, records and money in their homes"); *United States v. Angulo–Lopez,* 791 F.2d 1394, 1399 (9th Cir.1986) (magistrate "entitled to draw reasonable inferences" including the inference that drug dealers have drugs "where dealers live"); *see also* 2 W. LaFave, Search & Seizure § 3.7(d) at 378–79 (1996).

Minnesota has not adopted the reasoning of these cases. We find no probable cause in this case to link respondent's possession of one ounce of cocaine in Minneapolis to possible evidence or contraband at his residence 75 to 85 miles away in Elgin, Minnesota. More than mere possession of an ounce of cocaine is required to demonstrate probable cause that an individual is a dealer and that his home contains evidence or contraband. The affidavit in this case did not provide sufficient facts to infer a reasonable nexus linking the drug possession in Minneapolis to the home in Elgin.

Minnesota requires the state to provide more facts than were provided here in order to link drug activity to an individual's home and to support issuance of a warrant. *See, e.g., State v. Cavegn,* 356 N.W.2d 671, 674 (Minn.1984) (sufficient connection between illegal items and place to be searched, or "object-place nexus," because the affidavit contained information that a sale of drugs actually occurred at the alleged dealer's home); *State v. White,* 332 N.W.2d 910, 911 (Minn.1983) (sufficient nex-

us for a warrant to search defendant's residence because the affidavit stated that a large quantity of harvested marijuana had been found partially concealed on defendant's land prior to issuance of the warrant and a search of defendant's neighbor's land resulted in the discovery of marijuana in containers with defendant's name or initials); *State v. Braasch*, 316 N.W.2d 577, 578–79 (Minn.1982) (sufficient nexus because the affidavit indicated that the authorities observed defendant entering her residence shortly after picking up a mailed package which authorities knew contained hashish); *State v. Yaritz*, 287 N.W.2d 13, 15 (Minn. 1979) (sufficient nexus because the supporting affidavit for the warrant indicated that after defendant arranged two controlled sales by telephone, law enforcement observed him going straight from his house to the place where the sale occurred).

■ Appellant argues that under *Novak* a reasonable inference may be made linking a dealer's possession of drugs on the street to the probability that the dealer's residence will contain evidence or contraband.

> We attach considerable significance to the information indicating that petitioner was a drug wholesaler. The fact that petitioner dealt in large quantities increased the likelihood that police would find marijuana in a search of his residence.

*Novak*, 349 N.W.2d at 832–33. The state argues the fact that respondent dealt in a large quantity of drugs, over one ounce of cocaine, supports the issuing judge's determination that the affidavit provided probable cause to issue the warrant to search his home.

The state's analysis, however, extends *Novak* beyond its holding. While the fact that Novak dealt in large quantities of drugs may have "increased the likelihood" that police would find evidence in his home, the court did not rule that possession alone provided conclusive evidence for a probable cause determination. On the contrary, the warrant application in *Novak* provided significantly more evidence linking Novak's drug activity on the street to his home. The affidavit established that Novak was involved in the drug business as a drug wholesaler, that he

lived in Austin, and that after he arranged on the telephone to sell a large amount of marijuana to an undercover officer, officers observed him leave his house, drive around Austin, and drive to Albert Lea to make the sale. *Novak*, 349 N.W.2d at 832. This affidavit provided the court with a nexus between the criminal activity in Albert Lea and Novak's residence in Austin.

In the instant case, the affidavit did not contain comparable evidence linking respondent's alleged possession in Minneapolis and the likelihood of evidence or contraband being found at his residence 75 to 85 miles away. The omnibus court correctly determined that the issuing court went beyond the permissible scope of *Novak* and other Minnesota cases for finding probable cause to authorize a warrant to search a residence. The state has not shown that the omnibus court clearly and unequivocally erred in determining the affidavit lacked probable cause.

## II. Did the omnibus court properly deny application of a "good faith" exception to the exclusionary rule?

■ The Supreme Court has adopted an exception to the Fourth Amendment exclusionary rule for evidence seized pursuant to a facially valid warrant that is later found to be lacking in probable cause if the police obtained the warrant in good faith. *United States v. Leon*, 468 U.S. 897, 926, 104 S.Ct. 3405, 3422, 82 L.Ed.2d 677 (1984). The state argues that because the officers acted in good faith, this case is ideal for the application of the good faith exception set forth in *Leon* and urges this court to adopt the rule. We decline the state's invitation.

In *Leon* the Court found a facially valid warrant invalid because it was based on stale information and did not provide sufficient evidence to support the reliability of its informant. *Id.* at 904, 104 S.Ct. at 3410–11. While law enforcement performed an independent investigation, that work "neither cured the staleness nor corroborated the details of the informant's declarations." *Id.* at 904, 104 S.Ct. at 3411. Despite the good-faith efforts of law enforcement, the court found the search warrant invalid and held

that the evidence seized under the warrant should have been excluded. However, the Court re-examined the remedial purposes of the exclusionary rule and recognized that the purpose of deterring police misconduct in cases would not be furthered in cases in which law enforcement acts in good faith on technically invalid warrants. *Id.* at 920, 104 S.Ct. at 3419. The Court adopted a good faith exception to the rule and reversed the order suppressing the seized evidence. *Id.* at 926, 104 S.Ct. at 3422.

Adoption of a good faith exception in this case would be inappropriate based on the reasoning in *Leon.* While "misconduct" is not an accurate term for the conduct of the officers in this case, the officers' conduct here is nonetheless of the type that the exclusionary rule seeks to prevent. Law enforcement did not provide sufficient information in the application for the search warrant to support a finding of probable cause. The officers provided no investigative information to corroborate the conclusory statements of the affiant. Nor did the officers offer any independent information to connect the possession of drugs in Minneapolis to the residence in Elgin.

Furthermore, the Minnesota Supreme Court has declined to adopt a good faith exception to the exclusionary rule for a violation of Article I, Section 10 of the Minnesota Constitution. *See State v. Zanter,* 535 N.W.2d 624, 634 (Minn.1995). Therefore, we again decline to adopt a good faith exception. *See Minnesota State Patrol Troopers Ass'n ex rel. Pince v. State, Dept. of Pub. Safety,* 437 N.W.2d 670, 676 (Minn.App.1989), *review denied* (Minn. May 24, 1989); *State v. Gabbert,* 411 N.W.2d 209, 213–14 (Minn.App. 1987); *State v. Herbst,* 395 N.W.2d 399, 404 (Minn.App.1986).

### DECISION

The state has not demonstrated that the district court erred in finding that the search warrant application failed to establish probable cause for issuing the warrant to search respondent's home, and the district court properly denied the application of a "good faith" exception to the exclusionary rule.

**Affirmed.**

RANDALL, Judge, concurring specially.

I agree with the analysis and the result of the majority, but I write specially to highlight a disturbing argument raised by appellant State.

As the majority correctly points out, the mere possession of an ounce of cocaine, standing by itself, is probable cause for nothing more than at the time the person was charged, they were in possession of cocaine. It is far short of justifying the quantum leap the state insists we make here. The state insists that when you have about one ounce of cocaine in your possession, even when you are 80 miles from home, nothing more is needed to establish you are a drug dealer, not a drug possessor, that your home likely contains evidence of contraband, and that a magistrate should issue a search warrant for your home.

Appellant's brief stated flatly "the supporting affidavit established that defendant was a drug dealer." Appellant's brief supports that remarkable statement by pointing out the defendant was found with approximately one ounce of cocaine on his person and that the arresting officer, "knows through training and experience that an ounce of cocaine is considered more than for personal use and indicates that the person possessing that quantity normally sells the drug in smaller quantities." It is true the officer established some training and experience in the area of drugs and drug dealers, but so what. If the state can qualify experts, whether in law enforcement or otherwise, to give as an expert opinion the statement that when you have one ounce of cocaine in your possession, or more, you are a dealer, it would be incumbent in a criminal system, based on a fair trial and an adversarial process, for the defendant to be able to qualify an expert who would state, for instance, "based on my training and experience, etc., it is my expert opinion that you are never a dealer unless you are in possession of two or more ounces of cocaine." Or, what about 2.5 ounces, or 3.7 ounces, or 4 ounces, or whatever?

Does the state's position mean that if you are in possession of less than one ounce of cocaine you can never be a dealer? It is likely they would not concede that. A person in possession of a small amount of drugs could turn out to be a large dealer. Just as likely, a person in possession of one ounce of cocaine or more could be a heavily addicted user who buys that much at one time to save money. Or put another way, the presence or absence of one ounce of cocaine on a person, without more, is not even close to conclusive evidence that the person is or is not a dealer.

The state's emphasis on relying on the officer's "expert opinion" that possession of one ounce of cocaine establishes that you are a drug dealer and therefore, without more, we can get a search warrant for your home because your home is likely to contain contraband, is constitutionally infirm, and dangerous to the criminal justice system. All attempts at "one size fits all" generally end up snaring the innocent and unwary more than criminals. Are we now to say that if you are caught hours and miles away from your home with an illegal lock pick in your wallet, without more, that alone establishes you are a burglar, establishes that your home is likely to have fruits of your illegal activity, and that now a search warrant of your home is justified?

Are we to say that if you are found hours or miles away from your home with stolen goods in your possession, that, without more, you are now established as a fence, your home is established as a place where stolen property will be found, and now, without more, a search warrant for your home is authorized?

The state's reliance on the opinion of an officer that one ounce of cocaine means you are a drug dealer, and means you normally sell the drug in small quantities, is part of a disturbing trend by the prosecution to ask law enforcement officers to give opinions on a defendant's guilt or innocence, and opinions as to which criminal statute they have violated. It has always been constitutionally safer, and remains so, for the state to bring its evidence, on a proposed search warrant, to a detached neutral magistrate, and at the criminal trial, to bring its evidence to a detached neutral jury, and present the evidence in a straight forward fashion without the gratuitous rhetoric. The magistrate and the jury, as fact-finders, are guided by long-standing law, and are perfectly capable of making fact determinations on their own.