**STATE of Minnesota, Respondent,**

v.

**Ron Martin BRENNAN, Appellant.**

No. A03–429.

Court of Appeals of Minnesota.

Feb. 3, 2004.

Mark D. Nyvold, St. Paul, MN, for appellant.

Mike Hatch, Attorney General, St. Paul, MN; and Amy Klobuchar, Hennepin County Attorney, Jean E. Burdorf, Assistant County Attorney, Minneapolis, MN, for respondent.

Considered and decided by WILLIS, Presiding Judge, KLAPHAKE, Judge, and ANDERSON, Judge.

## OPINION

G. BARRY ANDERSON, Judge.

After the district court denied appellant Ron Brennan's motion to suppress evidence obtained during a search of his home, the parties submitted this case to the court on stipulated facts. The district court found Brennan guilty of five counts of possession of child pornography, in violation of Minn.Stat. §§ 617.246; 617.247, subd. 4 (2000). The district court sentenced Brennan to a 19–month stayed sentence, placed him on probation for three years, and ordered him to complete sex-offender treatment.

Brennan now challenges his conviction and sentence, arguing that (1) the search of his house was unlawful because the warrant authorizing the search was not supported by probable cause and (2) the district court abused its discretion by imposing an upward durational sentencing departure. We affirm in part, reverse in part, and remand.

## FACTS

Brennan worked for the American Cancer Society (ACS) from March 1999 until March 2001. The ACS assigned Brennan a laptop computer to use at work. It later terminated Brennan's employment, after discovering that Brennan had used the computer to view pornography while at work. After the ACS terminated Brennan's employment, it put Brennan's laptop in a locked, secured storage area.

In September 2001, an ACS information-and-technology technician archived Bren-

nan's laptop and found hidden directories containing images of child pornography. The ACS contacted the Edina Police Department and relinquished the laptop to the police.

A subsequent forensic examination of Brennan's laptop revealed multiple images of child pornography. These images had been stored on the laptop on different dates, including October 29, 2000; January 17, 2001; and February 22, 2001.

After Brennan admitted to police that he had stored images of child pornography on his ACS laptop, the police applied for a warrant to search Brennan's house. In relevant part, the affidavit in support of the warrant stated:

> Your affiant's training and experience has shown that those engaged in the viewing of children engaged in sexually explicit acts in electronically stored data have also a tendency to view such material in other forms of media such as magazines, DVD's, video's or other paper or electronic imaging devices. Frequently these materials are kept in the pornography violator's *home* where it is safe to observe without the interference of law enforcement and in assumed secrecy.

(Emphasis in original.) The district court issued the warrant to search Brennan's house. The police executed the warrant and seized seven computers, as well as computer equipment.

A forensic examination of the computers and equipment seized from Brennan's home revealed numerous images depicting child pornography. The examination determined that the illicit images had been created and accessed between June and September 2001.

Originally, the state charged Brennan with three counts of possessing child pornography based on the images seized from his work laptop. Later, the state amended the complaint to include two more counts of possession, stemming from the images found on Brennan's home-computer equipment.

At the sentencing hearing, the district court determined that the offense-severity level of Brennan's crimes was Level III. Treating the convictions as two behavioral incidents, the district court imposed one sentence for the first three counts and another sentence for the remaining two counts. The presumptive sentence for the last sentence was 13 months. But the district court imposed a sentence of 19 months that was to run concurrently with the first sentence. Brennan objected to the sentence on the ground that he had never received notice that the court was considering imposing an upward durational departure from the sentencing guidelines. The district court rejected this objection and placed Brennan on probation.

## ISSUES

I.   Did the affidavit in support of a warrant to search Brennan's house articulate sufficient facts to support the district court's finding that there was a fair probability that evidence of child pornography would be found in Brennan's house?

II.  Did the district court abuse its discretion by imposing an upward durational departure to Brennan's stayed sentence?

## ANALYSIS

### I.

■ Brennan argues that the district court abused its discretion by basing its determination of probable cause on the affiant's training and experience because, in Minnesota, an affiant's training and ex-

perience alone cannot create a sufficient nexus between an individual's possession of child pornography at work and his home, the place to be searched. Brennan argues that the information contained in the application for the warrant to search his house was therefore insufficient to establish probable cause. We disagree.

A neutral and detached magistrate, upon a finding of probable cause, may issue a search warrant. Minn.Stat. § 626.08 (2000); *State v. Harris,* 589 N.W.2d 782, 787 (Minn.1999). Probable cause to issue a warrant exists when the totality of the circumstances establishes that there is a fair probability that evidence of a crime will be found in a particular place. *Id.* at 788. The Minnesota Supreme Court "has historically required a direct connection, or nexus, between the alleged crime and the particular place to be searched." *State v. Souto,* 578 N.W.2d 744, 747 (Minn.1998). The factors the issuing judge must consider in determining whether such a nexus exists include the nature of the crime, "the nature of the items sought, the extent of the suspect's opportunity for concealment, and the normal inferences as to where the suspect would normally keep the items." *Harris,* 589 N.W.2d at 788. Information linking the crime to the place to be searched and the freshness of the information are also relevant. *Id.* at 747 (citing 2 Wayne R. LaFave, *Search and Seizure* § 3.7(d) (3d ed.1996)). An issuing judge may not base a finding of probable cause on an investigator's "wholly conclusory statement." *Illinois v. Gates,* 462 U.S. 213, 239, 103 S.Ct. 2317, 2332–33, 76 L.Ed.2d 527 (1983). But the issuing judge "is entitled to draw common-sense and reasonable inferences from the facts and circumstances" set forth in an affidavit. *State v. Eggler,* 372 N.W.2d 12, 15 (Minn.App.1985), *review denied* (Minn. Sept. 19, 1985).

We review a determination of probable cause to ensure "that 'the issuing judge had a substantial basis for concluding that probable cause existed.' " *Harris,* 589 N.W.2d at 788 (quoting *State v. Zanter,* 535 N.W.2d 624, 633 (Minn.1995)). In determining whether a substantial basis existed, our review is limited to determining whether, given the totality of the circumstances set forth in the affidavit before the issuing judge, including the veracity and basis of knowledge of persons supplying hearsay information, there was a fair probability that contraband or evidence of a crime would be found in a particular place. *Souto,* 578 N.W.2d at 747; *Zanter,* 535 N.W.2d at 633. We accord great deference to the issuing judge's finding of probable cause. *State v. Wiley,* 366 N.W.2d 265, 268 (Minn.1985).

Brennan argues that the warrant to search his house was defective because there was no nexus between his crime of possessing child pornography on his work laptop and his house. We disagree. In Minnesota, there is no bright-line rule that a warrant will not issue merely because probable cause is based on deductions made from an affiant's training and experience. In fact, the Minnesota Supreme Court held that a police affiant's training and experience can be a proper factor to consider in making a probable-cause determination. *State v. Miller,* 666 N.W.2d 703, 714 (Minn.2003) (concluding that officer's theory that based on her training and experience, and given the nature of the crime, plastic female head was symbolic of manner in which victim was decapitated supported finding of probable cause to seize plastic head).

In the context of child-pornography-related crime, federal courts have concluded that an affiant's training and experience could support a finding of probable cause. The Eighth Circuit Court of Appeals, for

example, has held that an affiant's statement that child pornographers "almost always maintain and possess their materials in a place considered secure" could establish a nexus between the alleged crime and the suspect's home. *United States v. Chrobak*, 289 F.3d 1043, 1046 (8th Cir. 2002). Other federal courts have reached the same conclusion. *See e.g., United States v. Hay*, 231 F.3d 630, 635 (9th Cir. 2000) (holding that where evidence showed that appellant received pornographic images at an internet address assigned to him at his apartment, affiant's statement that individuals who possess and transport pornography do not dispose of the sexually explicit material and generally have additional images was sufficient to support probable cause for a warrant to search appellant's apartment); *United States v. Lacy*, 119 F.3d 742, 746 (9th Cir.1997) (holding that when telephone records reflected that the appellant called a bulletin-board system that posted child pornography and downloaded images of child pornography from the bulletin-board system, affiant's statements, based on her training and experience, that collectors of child pornography rarely, if ever, dispose of the explicit material and generally keep it in a secure place—typically their homes—demonstrated that probable cause existed to search appellant's home). *But see United States v. Zimmerman*, 277 F.3d 426, 433 n. 4 (3rd Cir.2002) (noting that it was undisputed that there was no probable cause to search appellant's apartment for child pornography, but that if the court was required to determine what weight to give the affiant's statements, which were based on training and experience, it would most

likely decide that the affiant's boilerplate statements "added fat to the affidavit, but certainly no muscle") (quotation omitted); *United States v. Weber*, 923 F.2d 1338, 1344–46 (9th Cir.1990) (holding that where appellant ordered four pictures of child pornography, affiant's belief that those four pictures, as well as books, magazines, photographs, films, videotapes, and undeveloped films depicting acts of child pornography would be found at appellant's home, and affiant's boilerplate recitation of how child molesters, pedophiles, and child pornography collectors behaved did not establish probable cause that appellant ordered anything other than the four pictures at his house).

Brennan cites *State v. Kahn, State v. Souto*, and *State v. Secord* for the proposition that a warrant to search a particular location may issue only when there are specific facts that create a nexus between the alleged crime and the place to be searched by police. *See Souto*, 578 N.W.2d at 749 (holding that law-enforcement affiant's statement that "he knew" defendant was involved in possession and distribution of drugs "was too vague and conclusory" to support finding of probable cause); *Kahn*, 555 N.W.2d 15, 18 (Minn. App.1996) (holding that issuing judge did not have probable cause to issue warrant to search defendant's home where defendant's arrest for possession of one ounce of cocaine occurred 75 to 85 miles from his home); *Secord*, 614 N.W.2d 227, 229 (Minn.App.2000),[1] *review denied* (Minn. Sept. 13, 2000).

■ But *Kahn* and *Souto* are distinguishable from the present case because of

1.  But in *Secord*, the district court *did not* rely on the affiant's statements based on training and experience. 614 N.W.2d at 229–30. This court, therefore, expressly declined to review the state's claim that a deduction drawn from the affiant's training and experience could support a finding of probable cause in the context of child-pornography-related crime. *Id* at 230. Thus, *Secord* does not support Brennan's challenge to the probable-cause determination here.

the nature of the crime at issue. In making a probable-cause determination, courts must consider the nature of the crime "and the normal inferences as to where the suspect would normally keep the items [sought]." *See Harris,* 589 N.W.2d at 788 (quoting *State v. Pierce,* 358 N.W.2d 672, 673 (Minn.1984)). Unlike the drug-dealing activity discussed in *Kahn* and *Souto,* viewing and possessing child pornography is, by its nature, a solitary and secretive crime. A child-pornography case is, therefore, the type of case in which courts may properly consider an affiant's training and experience in making the probable-cause determination because the court could reasonably draw an inference that the suspect would keep the illicit images in a place considered safe and secret, like the home. *See Chrobak,* 289 F.3d at 1046 (holding that affiant's statement, based on her experience, that pedophiles maintain their child pornography in a secure place provided sufficient nexus to defendant's home); *see also Harris,* 589 N.W.2d at 788 (concluding that one factor that an issuing judge may consider in making the probable-cause determination is a reasonable inference as to where a suspect would normally keep the type of items sought).

Here, several factors support the district court's determination that probable cause existed to search Brennan's house. First, the affidavit supporting the warrant included affiant's statements that, based on his training and experience, those who engage in viewing child pornography have a tendency to view explicit images in their own homes. Basing his conclusions on experience, rather than merely making conclusory statements, the affiant provided evidence that contributed to the district court's finding that a fair probability existed that police would find child pornography in Brennan's house.

Second, the possession of child pornography is a crime commonly committed in secret. By the very nature of the crime, it is reasonable to infer that someone who possesses and views child pornography would keep the illicit material in a safe and secretive place like the home. *See Lacy,* 119 F.3d at 746 (holding that nature of child pornography was such that there was "good reason" to believe downloaded image would be stored in defendant's home). Because activities in the home are sheltered from public view, the home is a safe and secret place to keep child pornography. The secretive nature of the crime therefore supports the district court's probable-cause determination to issue a warrant to search Brennan's house.

Third, laptops, by nature, are easily transported. It was thus reasonable for the district court to infer that because of the ease with which Brennan could have transported his work laptop to his house, it was likely that the illicit images found on the laptop would also be found on Brennan's home computer.

Fourth, because Brennan viewed child pornography at work, on a company laptop, it was reasonable for the district court to infer that Brennan also viewed child pornography on a computer at his house. *See Eggler,* 372 N.W.2d at 15 (supporting the proposition that the district court can draw reasonable inferences in evaluating an affidavit in support of a search warrant). The sheer brazenness with which Brennan flaunted both company policy and the law of the State of Minnesota by viewing illicit material at work supports an inference that Brennan would view such material at home, in a more private setting.

Fifth, the facts in this case are at least as compelling as the facts supporting probable cause in *Chrobak,* where a warrant to search Chrobak's home was issued based

on the facts that the moniker of a sender of child pornography was registered to Chrobak and that, in the affiant's training and experience, child pornographers generally maintain and possess child pornography in a secure place. *Chrobak,* 289 F.3d at 1046.

The factors supporting the district court's determination of probable cause in this case, if evaluated in isolation, may not have supported a finding of probable cause to search Brennan's house. But because the "totality of the circumstances" established a substantial basis to believe that there was a fair probability that evidence of child pornography would be found in Brennan's house, the district court did not abuse its discretion in finding probable cause to search Brennan's house and properly issued the search warrant. *See Wiley,* 366 N.W.2d at 268 (holding that affidavit supporting application for search warrant set forth sufficient evidence to establish probable cause for the search). Therefore, on this record, we affirm the district court's determination that probable cause existed to search Brennan's house.[2]

## II.

Brennan next argues that the district court's upward durational departure in sentencing should be reversed because (1) the district court did not provide him with proper notice of the possibility of an upward durational departure in his sentence, as required by Minn. R.Crim. P. 27.03; and (2) the departure is not justified by substantial and compelling circumstances.

Brennan argues that because the district court never gave notice of its intent to consider an upward departure from the sentencing guidelines, he was deprived of the notice required by rule 27.03, and the departure should therefore be reversed. We agree.

Minn. R.Crim. P. 27.03 governs sentencing proceedings in Minnesota. Minn. R.Crim. P. 27.03, subd. 1(A)(4), states, "[i]f the facts ascertained at the time of a plea or through trial cause the judge to consider departure from the sentencing guidelines appropriate, the court shall advise counsel of such consideration." Further, Minn. R.Crim. P. 27.03, subd. 1(C), states, "[i]f departure from the sentencing guidelines appears appropriate, and the court has not previously notified the parties or counsel for the parties that the court is considering departure, the court shall forward notification of such consideration at the time the sentencing worksheet and any presentence investigation report is forwarded."

Brennan hinges his argument on this court's holding in *State v. Bock,* 490 N.W.2d 116, 123 (Minn.App.1992), *review denied* (Minn. Aug. 27, 1992). In *Bock,* we discussed the requirement that a district court give notice of its intent to depart from the sentencing guidelines. *Id.* at 122. But in that case, we concluded that the district court's failure to provide notice of its intent to depart was nonprejudicial because the state had filed a notice of motion and motion for an upward durational departure prior to the sentencing hearing and had reiterated the request for departure when defendant's counsel moved for sentencing in accordance with the presumptive sentence and because the appellant did not object to the lack of notice. *Id.* Here, unlike *Bock,* Brennan did not have any notice that the state was seeking an upward durational departure until the sentencing hearing, and Brennan did ob-

2. Because Brennan does not raise the issue, we expressly decline to reach the question of whether the scope of the search warrant is-

sued to search Brennan's home exceeded the scope of the probable cause used to support the warrant.

ject to the lack of notice at the sentencing hearing.

The rules of criminal procedure are clear; the court must give notice when considering a departure from the sentencing guidelines. Minn. R.Crim. P. 27.03, subd. 1(A)(4), (C). In *Bock*, we concluded that in some circumstances the court's failure to notify defendant of its intention to consider an upward durational departure is nonprejudicial, but that is not the case here. *Cf. Bock*, 490 N.W.2d at 122. Because Brennan had no notice of the district court's intention to consider an upward durational departure, and because Brennan objected to the lack of notice, we must reverse and remand the upward durational departure in Brennan's sentence. We remand for resentencing to give Brennan an opportunity to prepare and submit arguments opposing the upward departure in his sentence. Because we remand for resentencing, we do not reach Brennan's second challenge to the upward durational departure: that it was not justified by substantial and compelling circumstances.

### DECISION

Because we hold that probable cause to search Brennan's house existed, we affirm the district court's decision to issue a warrant to search the house. But because Brennan did not have notice of the district court's intention to consider an upward departure in sentencing and because Brennan objected to the lack of notice, we reverse and remand the sentencing issue to the district court with instructions to give Brennan an opportunity to prepare and submit arguments opposing the upward departure in his sentence.

**Affirmed in part, reversed in part, and remanded.**