*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0426**


State of Minnesota,
Appellant,

vs.

Shawnti Tramayne Fleming,
Respondent.


**Filed September 15, 2014
Reversed and remanded
Halbrooks, Judge**


Hennepin County District Court
File No. 27-CR-12-32133

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Kelly O'Neill Moller, Assistant County Attorney, Minneapolis, Minnesota (for appellant)

Kirk M. Anderson, Anderson Law Firm, PLLC, Minneapolis, Minnesota; and

Scott A. Lewis, Meghan Bork-Dellenbach, Lewis & Associates, PA, Minneapolis, Minnesota (for respondent)

        Considered and decided by Halbrooks, Presiding Judge; Ross, Judge; and Chutich,

Judge.

**HALBROOKS**, Judge

In this pretrial prosecution appeal, the state contends that the district court erred by suppressing evidence found in a search incident to arrest. Because the information provided by a confidential reliable informant was sufficient to establish probable cause to arrest respondent, the search incident to arrest was valid. We reverse and remand.

## FACTS

On September 25, 2012, a confidential reliable[1] informant (CRI) contacted Minneapolis police officer Jeffrey Werner, offered to purchase crack cocaine from a contact he knew as "Joseph," and described how his transactions with Joseph had transpired in the past. The CRI described Joseph as "a white male, heavyset with a baldhead head [sic] and would be driving a light blue car." When the CRI had purchased cocaine from Joseph in the past, a third party described as a black male driving a tan Blazer with an identified license-plate number brought the cocaine to the meeting place and gave it to Joseph to give to the CRI. "[The CRI met] Joseph, [gave] Joseph the money, and then Joseph approache[d] the Blazer to do the transaction, and then Joseph [brought] the drugs back to the CRI." The CRI had, in the past, observed the person in the Chevy Blazer deliver the drugs to Joseph.

---

[1] The CRI had within the previous two months provided information leading to two narcotics-related arrests, and he had previously purchased cocaine from this seller.

In the officer's presence, the CRI contacted Joseph and arranged to purchase one-half ounce of crack cocaine. Joseph told the CRI to meet him immediately at an identified intersection in Minneapolis. Officers went to the area to set up surveillance.

When officers arrived, they saw a man matching Joseph's description seated in a light blue car. The CRI then arrived on a bicycle, approached the light blue car, and spoke with Joseph. While they were speaking, a black male later identified as respondent Shawnti Tramayne Fleming drove by slowly in a tan Blazer bearing the identified license-plate number. Fleming turned the corner and parked, and Joseph left the CRI and walked toward Fleming. As Joseph reached the Blazer, officers "moved in for the arrest" because they "didn't want the transaction to take place."

In a search incident to Fleming's arrest, officers found 14 grams of cocaine and more than $4,000 in the pocket of a jacket in Fleming's lap. Fleming was charged with one count of first-degree controlled-substance crime (sale) in violation of Minn. Stat. § 152.021, subd. 1(1) (2012), and one count of gross misdemeanor child endangerment[2] under Minn. Stat. § 609.378, subd. 1(b)(2) (2012). Fleming moved to suppress the evidence resulting from the search, arguing that police lacked probable cause to arrest him. The district court granted the suppression motion, ruling that the information provided by the CRI supported reasonable, articulable suspicion for an investigatory stop but did not rise to the level of probable cause to arrest Fleming. This appeal follows.

---

[2] Fleming's young child was with him in the Blazer.

3

**DECISION**

When the state appeals a pretrial order suppressing evidence, it must "clearly and unequivocally show both that the [district] court's order will have a critical impact on the state's ability to prosecute the defendant successfully and that the order constituted error." *State v. Scott*, 584 N.W.2d 412, 416 (Minn. 1998) (quotation omitted). The state must satisfy the critical-impact test for this court to have jurisdiction. *State v. Baxter*, 686 N.W.2d 846, 850 (Minn. App. 2004). Critical impact is shown when "the lack of the suppressed evidence significantly reduces the likelihood of a successful prosecution." *State v. Kim*, 398 N.W.2d 544, 551 (Minn. 1987). The state need not show that conviction is impossible after the pretrial order—only that the prosecution's likelihood of success is seriously jeopardized. *State v. Underdahl*, 767 N.W.2d 677, 683 (Minn. 2009).

The critical-impact test is satisfied here. The charged offenses are first-degree controlled-substance crime (sale) and gross misdemeanor child endangerment. The suppressed evidence is the crack cocaine and cash found in Fleming's jacket. Without the cocaine and cash, the state's chances of successfully prosecuting Fleming are significantly reduced. *See Kim*, 398 N.W.2d at 551. Accordingly, we proceed to the merits of the case. *See Scott*, 584 N.W.2d at 416.

Whether there is probable cause to arrest depends on findings of fact that are reviewed under the clearly erroneous standard, but it is ultimately a question of law to be reviewed de novo. *State v. Horner*, 617 N.W.2d 789, 795 (Minn. 2000). The de novo standard also applies to our review of a district court's legal determinations within its

4

pretrial order on a motion to suppress evidence. *State v. Gauster*, 752 N.W.2d 496, 502 (Minn. 2008).

A warrantless arrest is lawful if it is supported by probable cause. *State v. Williams*, 794 N.W.2d 867, 871 (Minn. 2011). If an arrest is valid, police may conduct a warrantless search of the suspect incident to the arrest without additional justification. *State v. Walker*, 584 N.W.2d 763, 766 (Minn. 1998). A search incident to arrest is justified "when it is reasonable to believe evidence relevant to the crime of arrest might be found," *Arizona v. Gant*, 556 U.S. 332, 333 (2009) (quotation omitted), and allows officers to search a person's body and the area within his or her immediate control, *State v. Ortega*, 770 N.W.2d 145, 149 (Minn. 2009).

Probable cause exists if a person of ordinary care and prudence would, based on the objective facts, entertain "an honest and strong suspicion" that a specific individual committed a crime. *State v. Wynne*, 552 N.W.2d 218, 221 (Minn. 1996). "In applying this test, a court should not be unduly technical and should view the circumstances in light of the whole of the arresting officer's police experience as of the time of the arrest." *State v. Carlson*, 267 N.W.2d 170, 174 (Minn. 1978). The level of suspicion required for probable cause to arrest is the same as probable cause to search. *In re Welfare of G.M.*, 560 N.W.2d 687, 695 (Minn. 1997). "Whereas probable cause to search requires police to have a reasonable belief that incriminating evidence is in a certain location, probable cause to arrest requires police to have a reasonable belief that a certain person has committed a crime." *Id.* (citations omitted).

Here, the police relied heavily on information provided by a CRI. "Police may rely on an informant's tip if the tip has sufficient indicia of reliability." *State v. Cook*, 610 N.W.2d 664, 667 (Minn. App. 2000), *review denied* (Minn. July 25, 2000). Whether information provided by an informant is sufficient to establish probable cause is determined by examining the totality of the circumstances. *State v. Munson*, 594 N.W.2d 128, 136 (Minn. 1999); *see also Illinois v. Gates*, 462 U.S. 213, 238-39, 103 S. Ct. 2317, 2332 (1983) (adopting "the totality-of-the-circumstances analysis that traditionally has informed probable cause determinations" and stating, "We are convinced that this flexible, easily applied standard will better achieve the accommodation of public and private interests that the Fourth Amendment requires.").

Our caselaw applying this flexible standard focuses on the factors that are most relevant to the circumstances of each particular case. *See*, *e.g.*, *Munson,* 594 N.W.2d at 136 (considering CRI's proven track record and the corroboration of details about a vehicle and its occupants); *State v. Holiday*, 749 N.W.2d 833, 841 (Minn. App. 2008) (considering firsthand observations and corroboration of defendant's name, nickname, physical description, gang affiliation, and vehicle information); *State v. Ross*, 676 N.W.2d 301, 304-05 (Minn. App. 2004) (considering CRI's track record, firsthand knowledge, corroboration of suspect's clothing, vehicle information, time and place of arrival, and correlation of the suspect's given name with his street name).

Here, the district court correctly observed that the standard is "the totality of the circumstances of the particular case," and found that the CRI's recent provision of information leading to two arrests "strongly indicates to this court that the CRI was

6

credible." We agree. The district court then considered whether officers had satisfactorily corroborated the CRI's information and found this aspect lacking. The district court stated that the police had corroborated only

> three pieces of information: 1) that Defendant was a black male (which the court notes is an extremely minimal physical description of Defendant); 2) that Defendant drove a tan Blazer with license plate [number]; and 3) that Defendant would, at the time of the drug transaction, drive to and stop near [Joseph], who would then approach Defendant.

The district court determined that although the information provided by the CRI was reliable, officers did not have probable cause to arrest Fleming because they had not identified him by name. But our caselaw has never required the identification of a defendant by name to establish probable cause, nor would this be practical.[3] In *Cook*, the deficiency was not that officers had failed to identify the defendant by name, but that the CRI had failed to predict the defendant's future behavior. *Ross*, 676 N.W.2d at 305 ("The crux of our reasoning [in *Cook*], though, was that the CRI 'did not predict any future behavior' by the defendant; thus leading to a conclusion that the CRI had only passed along easily obtainable information and not inside information."). Here, the CRI's detailed, predictive information is more like the information provided in *Ross* and *Munson* than the publicly available, non-predictive information provided in *Cook*.

---

[3] Fleming urges us to conclude that officers should have determined the identity of the registered owner of the tan Blazer. We are not persuaded. Under the circumstances of this case, the identity of the vehicle's registered owner would not "illuminate the commonsense, practical question whether there is 'probable cause'" to arrest its driver, who may or may not be its registered owner. *See Gates*, 462 U.S. at 230, 103 S. Ct. at 2328.

The district court's summary of the information supplied by the CRI and corroborated by the police omits many details that make up the totality of the circumstances: (1) the CRI ordered crack cocaine from Joseph as he said he could; (2) Joseph and his vehicle matched the descriptions provided; (3) Joseph was in the expected vehicle at the expected location at the expected time; (4) the CRI spoke with Joseph as predicted, after which a tan Blazer arrived at the time and place predicted; (5) the driver of the tan Blazer stayed in his car while Joseph approached him; and (6) the CRI waited at Joseph's vehicle. The corroboration of minor details can give credence to the information provided by an informant and can bolster an informant's reliability. *Holiday*, 749 N.W.2d at 841. The district court also failed to consider other factors bearing on reliability, such as the informant's firsthand knowledge of the transaction, that the transaction was arranged in the officer's presence, that the CRI gave a statement against interest in acknowledging past transactions with this seller, and that the CRI initiated contact with police to arrange the transaction.

The ultimate question is whether a person of ordinary care and prudence would entertain "an honest and strong suspicion" that Fleming had committed a crime when, after the CRI had arranged with Joseph to purchase crack cocaine, Fleming arrived at the time and place and in the exact vehicle predicted by the CRI, and Joseph left the CRI and approached Fleming. *Wynne*, 552 N.W.2d at 221. Under the totality-of-the-circumstances standard, all facts of the case are considered. *Williams*, 794 N.W.2d at 872. The district court here focused on the details that the CRI knew about Fleming *aside* from his role in the transaction, rather than how much of the CRI's information was

8

corroborated, how reasonable it was to suspect based on that information that Fleming had committed a crime, and other factors bearing on reliability. We conclude based on the totality of the circumstances that the information supplied by the CRI was sufficient to establish probable cause to arrest Fleming. The district court therefore erred by suppressing the evidence.

**Reversed and remanded.**