**STATE of Minnesota, Appellant,**

v.

**Corey Lamont HOLIDAY, Respondent.**

**No. A07–2366.**

Court of Appeals of Minnesota.

June 3, 2008.

Lori Swanson, Attorney General, St. Paul, MN and Michael O. Freeman, Hennepin County Attorney, Jean E. Burdorf, Assistant County Attorney, Minneapolis, MN, for appellant.

Leonardo Castro, Hennepin County Public Defender, Mariam P. Mokri, Assistant Public Defender, Minneapolis, MN, for respondent.

Considered and decided by WILLIS, Presiding Judge; SHUMAKER, Judge; and PORITSKY, Judge.

## OPINION

PORITSKY, Judge.[*]

Appellant State of Minnesota challenges the district court's suppression of evidence seized during a search conducted pursuant to a search warrant. Because the issuing magistrate had a substantial basis to conclude that probable cause existed to support the search warrant, we reverse.

## FACTS

On March 27, 2007, the issuing magistrate signed a search warrant authorizing a "no-knock" search of respondent Corey Lamont Holiday, Holiday's home, and Holiday's car. The information for the supporting affidavit was provided in large part by two informants. The initial tip that drug activity was taking place at Holiday's home was provided by a confidential informant (CI), whose reliability was not vouched for by the affiant. After receiving the tip, the police set up an attempted controlled buy, using a confidential reliable informant (CRI). The supporting affidavit provided in pertinent part:

> Within the last 72 hours, Your affiant was contacted by a confidential informant (CI) about a black male they knew as "Corey", and whose nickname was "Q," who was selling crack cocaine and marijuana out of his residence. The CI stated "Corey" was selling out of 2922 Aldrich Ave. N, Lower Unit. The CI stated there are two doors on the back of the residence and the door on the left went directly into the lower unit. The CI stated they had seen various people who would come to the back door of the residence. The CI stated they knew three handguns are inside the residence which "Corey" uses to protect himself

and his narcotics. The CI stated "Corey" was a Mickey Cobra gang member.

. . .

The CI also told your affiant that "Corey" drives a maroon Ford Expedition with silver rims with license plate URM–773. The CI stated "Corey" uses this vehicle frequently to make deliveries of large amounts of crack cocaine and marijuana around Minneapolis. The CI described "Corey" as a black male 32 years old, 5–6 with a medium build and braided hair.

Your affiant learned through GANG-NET, which is a data base of documented gang members throughout Minnesota; Corey Lamont Holiday, 04–22–1973, uses the nickname "Q" and is a documented Mickey Cobra Gangmember. The GANGNET system also stated that Holiday has "Violent Tendencies" and shot another member of the Mickey Cobra gang to gain more power within the gang. Holiday has also been to prison for Narcotics and Felon in Possession of a Firearm.

Your affiant conducted surveillance at 2922 Aldrich Ave. N and saw the maroon Ford Expedition with silver rims and MN URM–773 sitting in the rear of the address. I also saw there was two doors on the back of the residence. All of this information was consisted [sic] with the information I received from the CI.

Within the past 48 hours, using a separate confidential reliable informant (CRI), I gave them pre-recorded buy money and sent them to 2922 Aldrich Ave. N, Lower Unit in an attempt to purchase narcotics. The CRI went to the rear left door and knocked. The door was answered by a black male that

[*] Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

identified himself as being "Q". The CRI asked for a "dub", which is slang for a pill of crack cocaine. "Q" told the CRI that he did not know them and he would not sell anything to them. The CRI then left the address. As the CRI was leaving the address I saw Holiday leave the rear of the address, get into the maroon Ford Expedition URM–773, and begin following the CRI to see where they were going. After a short period of time Holiday returned to the address and went into the same door on the left that he had left from.

After the attempt [sic] buy I gave the CRI a booking photo of Holiday and the CRI positively identified him as the person that identified himself as "Q." The CRI also stated the door on the left lead directly into the lower unit of 2922 Aldrich Ave. N. This information was consistent with the information I received from the CI.

This CRI has furnished reliable and accurate information in the past and his/ her information has led to the issuance of search warrants and the seizure of controlled substances and weapons. The CRI previous information has also led to the conviction of numerous others for narcotics related crimes.

On April 4, 2007, the police executed the search warrant. The police detained Holiday, searched him, and saw him kick a plastic bag containing marijuana from his pants leg onto the floor. The police also recovered marijuana from Holiday's vehicle, kitchen, clothing items, and couch. The police recovered suspected crack cocaine, two digital gram scales, Ziploc baggies, approximately $1,400 in cash, and a box of shotgun ammunition. Holiday was charged with one count of fifth-degree controlled substance crime in violation of Minn.Stat. § 152.025, subds. 2(1), 3(b) (2006).

Holiday filed a motion to suppress the evidence of the search. The district court heard the matter and granted the motion. The district court determined that "the reliability of the CI was not sufficiently established, that the corroboration of easily obtainable facts and an unsuccessful attempt to purchase narcotics do not establish probable cause even when considered as a whole." The district court concluded that "when reviewing the affidavit as a whole the Court concludes that the information provided only gives rise to a mere suspicion of drug activity at the residence."

The state filed a motion requesting the district court to reconsider its suppression decision. The district court acknowledged that it failed to mention Holiday's criminal history in the initial order, but stated that Holiday's criminal record was "at best ... only corroborative evidence and not a sole basis for probable cause to issue a search warrant." The district court reaffirmed the initial suppression order, noting that the police did not sufficiently corroborate the CI's information and that the district court had appropriately weighed the unsuccessful controlled buy. This appeal follows.

## ISSUE

Did the district court err in suppressing evidence obtained during a search conducted pursuant to a search warrant?

## ANALYSIS

"When reviewing pretrial orders on motions to suppress evidence, we may independently review the facts and determine, as a matter of law, whether the district court erred in suppressing—or not suppressing—the evidence." *State v. Harris*, 590 N.W.2d 90, 98 (Minn.1999). When the state appeals a pretrial suppression order, the state "must 'clearly and un-

equivocally' show both that the [district] court's order will have a 'critical impact' on the state's ability to prosecute the defendant successfully and that the order constituted error." *State v. Scott,* 584 N.W.2d 412, 416 (Minn.1998) (quotation omitted).

### I. Suppressing the evidence has a critical impact on the state's case.

First, we must determine whether the district court's order suppressing the evidence will have a critical impact on the state's case against the defendant. "When the likelihood of a successful prosecution is significantly reduced by the unavailability of the suppressed evidence, the critical-impact standard is met." *State v. McGrath,* 706 N.W.2d 532, 539 (Minn.App. 2005), *review denied* (Minn. Feb. 22, 2006). Here, the state asserts that the controlled-substance charge is based on the marijuana seized during the execution of the warrant and that without such evidence, it cannot prosecute the case. Holiday does not contest the state's assertion. We conclude that the suppression of the evidence has a critical impact on the state's ability to prosecute the case.

### II. The warrant was supported by probable cause.

The second issue we must decide is whether the district court erred in suppressing the evidence based on its conclusion that the search warrant was not supported by probable cause. The state contends that the search warrant was based on probable cause and that the district court erred in concluding otherwise. Specifically, the state argues that the district court erred when it (1) failed to properly credit the CI's reliability, and (2) discounted Holiday's suspicious conduct during the attempted controlled buy.

The United States and Minnesota Constitutions provide that no warrant shall issue without a showing of probable cause. U.S. Const. amend. IV; Minn. Const. art. I, § 10. Generally, a search is lawful only if it is executed pursuant to a valid search warrant issued by a neutral and detached magistrate after a finding of probable cause. *See* Minn.Stat. § 626.08 (2006); *State v. Harris,* 589 N.W.2d 782, 787 (Minn.1999). "When determining whether a search warrant is supported by probable cause, we do not engage in a de novo review." *McGrath,* 706 N.W.2d at 539. Instead, "[g]reat deference must be given to the issuing [magistrate's] determination of probable cause." *State v. Valento,* 405 N.W.2d 914, 918 (Minn.App.1987). This court limits its review "to ensuring that the issuing [magistrate] had a substantial basis for concluding that probable cause existed." *McGrath,* 706 N.W.2d at 539.

To determine whether the issuing magistrate had a substantial basis for finding probable cause, we look to the "totality-of-the-circumstances" test for probable cause:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*State v. Wiley,* 366 N.W.2d 265, 268 (Minn. 1985) (quoting *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983)). In reviewing the sufficiency of the search-warrant affidavit under the totality-of-the-circumstances test, "courts must be careful not to review each component of the affidavit in isolation." *Id.* "[A] collection of pieces of information that would not be substantial alone can combine to create sufficient probable cause." *State*

v. *Jones,* 678 N.W.2d 1, 11 (Minn.2004). Furthermore, "the resolution of doubtful or marginal cases should be largely determined by the preference to be accorded warrants." *Wiley,* 366 N.W.2d at 268 (quotation omitted).

### A. The confidential informant was reliable.

▮▮▮▮ The state argues that based on the showing in support of the CI's basis of knowledge and veracity, the CI was reliable and the district court erred in concluding otherwise. The credibility of an informant is not assumed, and it is not enough for an affidavit to state in a "conclusory fashion" that the informant is credible or reliable. *State v. Siegfried,* 274 N.W.2d 113, 114 (Minn.1978). Instead, "the affidavit must provide the magistrate with adequate information from which he can personally assess the informant's credibility." *Id.* In evaluating the informant's credibility, the magistrate should consider the "basis of knowledge" and "veracity" of the informant supplying hearsay information. *State v. Souto,* 578 N.W.2d 744, 750 (Minn.1998) (citing *Gates,* 462 U.S. at 238, 103 S.Ct. at 2332). But the Supreme Court has also stated that the elements of basis of knowledge and veracity should not be

> understood as entirely separate and independent requirements to be rigidly exacted in every case. . . . Rather . . . they should be understood simply as closely intertwined issues that may usefully illuminate the commonsense, practical question of whether there is "probable cause" to believe that contraband or evidence is located in a particular place.

*Gates,* 462 U.S. at 230, 103 S.Ct. at 2328. "All of the facts relating to the informant should be considered in weighing reliability." *Souto,* 578 N.W.2d at 750 (citing

*State v. McCloskey,* 453 N.W.2d 700, 703 (Minn.1990)).

### 1. The confidential informant's basis of knowledge was clearly sufficient.

▮▮▮ "Recent personal observation of incriminating conduct has traditionally been the preferred basis for an informant's knowledge." *Wiley,* 366 N.W.2d at 269. Additionally, an informant's "statement that the event was observed first-hand[ ] entitles his tip to greater weight than might otherwise be the case." *Gates,* 462 U.S. at 234, 103 S.Ct. at 2330. Here, the affidavit stated that the CI "had seen [Holiday] inside this residence within the last 48 hours with a quantity of crack cocaine that he was selling to various people who would come to the back door of the residence." Thus, the CI's personal, first-hand basis of knowledge is persuasive for purposes of a probable-cause determination.

### 2. The confidential informant's veracity was established.

▮▮▮▮ Veracity can be established in a number of ways, such as showing that the informant has a proven track record of reliability, that the informant made an admission against interest, or that the informant's tip implicates someone the informant would be expected to protect. *Siegfried,* 274 N.W.2d at 114–15. Alternatively, and most relevant to our case, veracity can be proven "by showing that details of the tip have been sufficiently corroborated so that it is clear the informant is telling the truth on this occasion." *Id.* at 115.

Here, the district court concluded that the affidavit did not establish the CI's veracity because the CI's information was not sufficiently corroborated.[1] First, in its

---

**1.** The district court cites the informant's status as a CI, and not a CRI, as support for its

order denying the motion to reconsider, the district court stated that "police corroboration of [Holiday's] name, nickname, physical description, gang affiliation, and vehicle information add little to the CI's reliability." Second, the district court found that the facts that were corroborated were "easily obtained" and thus inadequate to bolster the CI's credibility. Third, the district court stated that because the controlled buy was unsuccessful, "the CI's information concerning drug activity at the residence was never sufficiently corroborated." Accordingly, the district court concluded that the search warrant was not supported by probable cause.

▆▆▆▆ The state contends that the district court erroneously minimized or discounted the value of the corroborative facts. We agree. Even corroboration of minor details lends credence to an informant's tip and is relevant to the probable-cause determination. *See Wiley,* 366 N.W.2d at 269 (recognizing that although not a key detail, corroboration of defendant's name, residence, and make of vehicle lent credence to informant's tip); *McCloskey,* 453 N.W.2d at 701, 704 (finding that even "minimal corroboration," including defendant's telephone number and the fact that defendant's residence had a detached garage, is relevant in making the totality-of-the-circumstances assessment). Further, as indicated in *Siegfried,* police corroboration of *"part* of the informer's tip as truthful may suggest that the entire case is reliable." 274 N.W.2d at 115 (emphasis added). In satisfying the corroboration requirement, there is no mandate that *every* fact in the CI's tip be corroborated, that a certain number of facts be

corroborated, or that certain types of facts must be corroborated. Accordingly, the district court erred in arbitrarily concluding that the corroboration of Holiday's name, nickname, physical description, gang affiliation, and vehicle information "add[s] little to the CI's reliability." Instead, the corroboration of even minor details lent credence to the information provided by the CI and bolstered the CI's reliability.

Next, the state argues that the district court erred in categorizing the corroborated facts as "easily obtained." The district court relied on *State v. Albrecht* for the proposition that when the facts corroborated are "easily obtained facts and conditions which by themselves are inadequate to support a finding of probable cause," such corroboration may be unpersuasive. 465 N.W.2d 107, 109 (Minn.App.1991). In *Albrecht,* the police corroborated the defendant's address and vehicle ownership. *Id.* This court held that such corroboration "without more, is not sufficient to support a finding of probable cause." *Id.* Here, as the state correctly notes, some of the details in this case were easily obtained (e.g., defendant's address) but other facts cannot be categorized as "easily obtained." For example, Holiday's gang affiliation and nickname would generally be known only to someone familiar with him. Additionally, the CI told the police that there were two doors in the back of Holiday's residence and that the left door led directly into the lower unit. When the CRI attempted the controlled buy, the CRI corroborated this information by indicating that the back left door did, in fact, lead

conclusion that the CI was not reliable. The district court noted that "if the CI was a CRI the Court would have a basis to give credit to the CI's information." The district court concluded that "because the information was provided by a CI and not a CRI, the court

sees no basis to credit the information provided by the CI as reliable." Neither party disputes the fact that the informant was a CI and not a CRI, and the district court correctly gave weight to this fact.

directly into the lower unit. Such information is not necessarily "easily obtained."

Finally, the state argues the district court erred in its conclusion that because the controlled buy failed, the CI's report was not corroborated. According to the affidavit before the magistrate, "The CRI asked for a 'dub,' which is slang for a pill of crack cocaine. [Holiday] told the CRI that he did not know them and he would not sell anything to them." The district court noted that any inferences drawn from the verbal exchange gave rise to a "mere suspicion [of] . . . illegal drug activity," not probable cause. Essentially, the district court concluded that because the exchange gave rise only to a suspicion of criminal activity, it could not contribute, along with other facts, to a finding that the CI was reliable.

We disagree with the district court's conclusion for two reasons. First, the district court took a hypertechnical view of the unsuccessful controlled buy. Second, the district court did not accord the issuing magistrate the appropriate deference.

Addressing the first reason, it appears to us that the district court considered the unsuccessful controlled buy in a hypertechnical, rather than common-sense, manner. *See Gates*, 462 U.S. at 236, 103 S.Ct. at 2331 ("[C]ourts should not invalidate . . . warrant[s] by interpreting affidavit[s] in a hypertechnical, rather than a common-sense, manner.") (quotation omitted). The district court emphasized and found "significant" the fact that the CRI "was unable to buy narcotics from the residence." The district court concluded that any inference

of criminal activity cannot "overcome the fact that in the present case there was not a successful controlled buy of narcotics."

Viewed in a common-sense manner, Holiday's answer did, in fact, corroborate the CI's report that Holiday was selling drugs out of his home. Implicit in Holiday's answer is the conclusion that if he had known the CRI, he would have sold drugs to the CRI.[2] Common sense would dictate that a non-drug-dealer, when answering the door and being asked for a "dub," would not know what the visitor was talking about and would most likely tell the visitor that he or she had the wrong address. Even if the resident were not a drug dealer but knew the meaning of the term "dub," it is highly unlikely that he would give the answer Holiday gave—that he did not know the visitor and would not sell anything to him or her.

■■■ Furthermore, the district court's conclusion requires a controlled buy to be successful in order to corroborate an informant's tip. As other jurisdictions have concluded, the controlled buy need not be successful in order to support a probable-cause determination. In *People v. Whitfield*, the undercover officer asked the defendant for "one," and the defendant produced a large bundle of envelopes that the officer believed contained heroin. 461 Mich. 441, 607 N.W.2d 61, 64 (2000). The defendant declined to complete the transaction when the officer was unable to name a common acquaintance, but added that he would "take care of" the officer if he returned with an acquaintance. *Id.* The

---

**2.** Holiday draws our attention to the fact that the affidavit states that " 'Q' told the CRI that he did not know them *and* he would not sell anything to them" rather than " 'Q' told the CRI that [*because*] he did not know them[,][ ] he would not sell anything to them" (emphasis added). Holiday notes that his statement did not contain a "because" clause, and

therefore it would be unreasonable to draw a causal link between Holiday's statement that he did not know the CRI and that he would not sell anything to the CRI. We disagree. While not a flat-out admission that Holiday was a drug dealer, it would be reasonable for the issuing judge to conclude that the two statements were linked.

Michigan Supreme Court concluded that taking a common-sense view of the totality of the circumstances, the defendant's response supported the issuance of a search warrant based on probable cause. *Id.* at 64–65; *see also Commonwealth v. Cramutola,* 450 Pa.Super. 345, 676 A.2d 1214 (1996) (issuance of warrant upheld where repeated controlled buy attempts failed because defendant refused to sell because she "did not know [the purchaser]," thought the purchaser "could be a cop," and "did not have any [drugs], but told [the purchaser] to call in advance next time"). Here, although Holiday's answer was not identical to the *Whitfield* or *Cramutola* defendants' answers, the effect was essentially the same, i.e., Holiday would have sold the drugs if he had known the CRI. This statement corroborates the CI's report that appellant was selling drugs out of his home.

■ As to our second reason, the district court did not afford "great deference" to the issuing magistrate. *See Gates,* 462 U.S. at 236, 103 S.Ct. at 2331 (the magistrate's "determination of probable cause should be paid great deference by reviewing courts") (quotation omitted). The Supreme Court has stated that "[a]fter-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review." *Id.* Furthermore, an issuing magistrate "is entitled to draw common-sense and reasonable inferences from the facts and circumstances given." *State v. Eggler,* 372 N.W.2d 12, 15 (Minn.App. 1985), *review denied* (Minn. Sept. 19, 1985) (quotation omitted). Here, the issuing magistrate could have drawn the reasonable inference that Holiday's answer was highly suspicious and was consistent with the response of an experienced drug dealer. The issuing magistrate is not required to draw innocent inferences; she is required to draw reasonable inferences.

The district court's evaluation of the unsuccessful controlled buy amounted to de novo review, not great deference.

**B. The unsuccessful controlled buy provides independent support for a finding of probable cause.**

■ In addition to supporting the CI's reliability, the unsuccessful controlled buy also provides independent support for a finding of probable cause. The district court failed to recognize that even noncriminal behavior can be given weight in the totality-of-the-circumstances test. Our supreme court has noted that probable cause requires "only a probability or substantial chance of criminal activity, not an actual showing of such activity, ... the significant fact being not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of noncriminal acts." *Olson v. Comm'r of Pub. Safety,* 371 N.W.2d 552, 555 (Minn.1985) (quotation omitted). Thus, "[i]nnocent or noncriminal activity can contribute to the totality of the circumstances on which a finding of probable cause is based." *McGrath,* 706 N.W.2d at 543. Here, it is undisputed that Holiday did not sell drugs to the CRI and thus his conduct during the attempted buy could be categorized as "noncriminal." However, Holiday's answer was evasive and suspicious at best. In fact, his answer implied that he would sell drugs to the CRI if he knew the CRI. Holiday's answer, though technically noncriminal, supports a finding of probable cause under the totality-of-the-circumstances test.

**C. Holiday's criminal record also provides support for the finding of probable cause.**

■ The state argues that Holiday's criminal record of controlled-substance and weapons convictions also sup-

ports the issuing magistrate's probable-cause determination. "A person's criminal record is among the circumstances a judge may consider when determining whether probable cause exists for a search warrant." *State v. Carter,* 697 N.W.2d 199, 205 (Minn.2005). Here, the district court found that Holiday's criminal record "at best . . . is only corroborative evidence and not a sole basis for probable cause to issue a search warrant." The state does not argue that Holiday's criminal record alone supports a probable-cause determination; instead, the state correctly asserts that the previous convictions simply provide additional support for the magistrate's probable-cause determination and corroborate the information provided by the CI. *See State v. Cavegn,* 356 N.W.2d 671, 673 n. 1 (Minn.1984) (stating that "a defendant's prior convictions, if relevant, may be considered on the issue of probable cause"); *see also McCloskey,* 453 N.W.2d at 704 (stating that even a defendant's "relatively minor trouble with the law" is of "some" probative value in determining probable cause). We agree with the state's assertion and conclude that Holiday's criminal record supports the magistrate's probable-cause determination.

## DECISION

The issuing magistrate made a practical, common-sense decision based on the totality of the circumstances that there was a fair probability that contraband would be found in Holiday's residence. The CI's report was based on personal, first-hand knowledge; the CI provided detailed information that was sufficiently corroborated when the police verified Holiday's name, nickname, physical description, residence, vehicle, and gang affiliation; the CI's report that Holiday was selling drugs out of his home was further corroborated by Holiday's suspicious behavior in refusing to sell drugs to the CRI; and Holiday's crim-

inal record was consistent with the CI's allegations of criminal activity.

Even if this were a marginal or doubtful case, the Supreme Court has mandated that resolution of such cases should be "largely determined by the preference to be accorded to warrants." *United States v. Ventresca,* 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965). Additionally, this court is to afford great deference to the issuing magistrate's determination of probable cause. *Valento,* 405 N.W.2d at 918. With this in mind, the search warrant application, taken as a whole, demonstrates that the issuing magistrate had a substantial basis for concluding that probable cause existed to support the search warrant. We reverse and remand for trial.

**Reversed and remanded.**