*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1013**

State of Minnesota,
Respondent,

vs.

Dana Jerome Duncombe,
Appellant.

**Filed April 18, 2016
Affirmed
Jesson, Judge**

Ramsey County District Court
File No. 62-CR-13-9964

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Elizabeth Lamin, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Bradford Colbert, St. Paul, Minnesota (for appellant)

Considered and decided by Schellhas, Presiding Judge; Jesson, Judge; and Klaphake, Judge.\*

---

\* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**JESSON**, Judge

After police obtained a warrant and searched his home, appellant was convicted of possession of a firearm by an ineligible person. Appellant challenges his conviction arguing that the warrant and supporting affidavit did not contain sufficient facts to establish probable cause. Because we conclude that the issuing judge had a substantial basis for the probable cause determination, we affirm. Appellant also argues that the circumstantial evidence is insufficient to support his conviction. We do not reach this issue. By submitting the matter to the district court pursuant to Minn. R. Crim. P. 26.01, subd. 4, appellant waived the right to challenge the sufficiency of the evidence on appeal.

## FACTS

In December of 2013, police executed a search warrant at appellant Dana Duncombe's home. The home was a duplex with separate units in the upper and lower levels. Police only entered the lower-level unit where Duncombe lived with his girlfriend. Duncombe's girlfriend was the only person in the home when the warrant was executed.

In one of the bedrooms in the lower unit, police found a black backpack containing a firearm, a loaded magazine, a scale and clear baggies holding a green leafy substance. Police also found a photograph of Duncombe and a letter addressed to Duncombe in the room. Duncombe's girlfriend told police that she shared the bedroom exclusively with Duncombe. She also said that she was not aware of any guns or drugs in the bedroom.

Police originally sought the warrant based on information provided by a confidential reliable informant (CRI) and a controlled buy. According to the supporting affidavit, the

2

CRI had assisted police in three separate cases in the past year-and-a-half. Each case resulted in "seizures of narcotics, arrests, and/or currency forfeitures."

The CRI told police that Duncombe sold cocaine, marijuana, pills, and heroin out of his home. The CRI had purchased narcotics from Duncombe in the past. The CRI provided the approximate location of Duncombe's home and told police that it was a multi-family home and Duncombe lived in the basement. Police showed the CRI a driver's license photograph of Duncombe, and the CRI confirmed Duncombe's identity.

Less than 72 hours before applying for the warrant, police conducted a controlled buy at Duncombe's home using the CRI. Prior to the controlled buy, police searched the CRI and the CRI's vehicle for money and controlled substances. Police provided the CRI with U.S. currency to purchase a specific amount of a controlled substance. Police kept the CRI under constant surveillance as the CRI entered and exited the home. After the controlled buy, police followed the CRI to a pre-arranged location, and the CRI turned over a controlled substance. The CRI told police that the CRI had purchased the controlled substance from Duncombe inside the residence.

Duncombe, who has prior first-degree aggravated robbery and second-degree controlled-substance convictions, was charged with possession of a firearm by an ineligible person. He moved to suppress the firearm on the grounds that the search warrant and supporting affidavit did not contain sufficient facts to establish probable cause. The district court denied the challenge.

Later, Duncombe challenged the warrant a second time. A different district court judge considered the matter based on the warrant, supporting affidavit, and the testimony

3

of the officer who submitted the warrant affidavit. The district court denied the challenge. Duncombe then stipulated to a body of evidence provided by the state, preserved his right to appeal pre-trial issues relating to the warrant, and submitted the matter to the district court pursuant to Minn. R. Crim. P. 26.01, subd. 4. The district court found Duncombe guilty. This appeal follows.

## D E C I S I O N

### I.

Duncombe first argues that the firearm must be suppressed because the search warrant and supporting affidavit lacked sufficient facts to establish probable cause. He claims that that the information provided regarding the CRI's reliability was "so generic it is worthless." He also claims that the tip provided by the CRI contains only conclusory statements that are insufficient to support probable cause. Lastly, he argues that the controlled buy cannot establish probable cause because the warrant and supporting affidavit do not contain information regarding the type of controlled substance purchased from Duncombe or how police identified the substance. We disagree.

The United States and Minnesota Constitutions provide that no warrant shall issue without a showing of probable cause. U.S. Const. amend. IV; Minn. Const. art. I, § 10. Generally, a search is lawful only if executed pursuant to a valid search warrant issued by a neutral and detached magistrate after a finding of probable cause. *See* Minn. Stat. § 626.08 (2012); *State v. Yarbrough*, 841 N.W.2d 619, 622 (Minn. 2014).

When reviewing probable cause to issue a warrant, we give "the district court's determination great deference." *State v. Rochefort*, 631 N.W.2d 802, 804 (Minn. 2001).

4

We limit our review to considering whether the issuing judge had a substantial basis for determining that probable cause existed to support the warrant. *Yarbrough*, 841 N.W.2d at 622. The substantial-basis determination is based on an examination of the totality of the circumstances. *State v. Holiday*, 749 N.W.2d 833, 839 (Minn. App. 2008).

> The task of the issuing [judge] is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before [the judge], including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*State v. Wiley*, 366 N.W.2d 265, 268 (Minn. 1985) (quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S. Ct. 2317, 2332 (1983)).

The crux of the application for the search warrant included information on the recent controlled buy, a description of Duncombe by the CRI, and the allegation that the CRI had purchased narcotics from Duncombe in the past, as well as the following two sentences: "The CRI has assisted the [drug task force] with three separate cases in the past year and a half. The past three cases the CRI provided [sic] have resulted in the seizures of narcotics, arrests, and/or currency forfeitures."

Duncombe first argues that the application for the warrant does not adequately establish the CRI's reliability. *See State v. Munson*, 594 N.W.2d 128, 136 (Minn. 1999) ("Having a proven track record is one of the primary indicia of an informant's veracity."). "[A]n informant's reliability may be demonstrated where the informant has previously given police correct information, but the affidavit must explicitly state this to be the case." *State v. Ward*, 580 N.W.2d 67, 71 (Minn. App. 1998). Here, the warrant affidavit states

5

that the CRI provided police with information leading to "seizures of narcotics, arrests, and/or currency forfeiture" on three occasions within the last year-and-a-half. Contrary to Duncombe's contention, further elaboration concerning the specifics of the CRI's record of reliability is not required. *Munson*, 594 N.W.2d at 136. As the Minnesota Supreme Court held in *Wiley*, a statement that the informant "has been used over several years successfully" is sufficient to establish reliability. *Wiley*, 366 N.W.2d at 269 & n.1

Reliability was reinforced, as described in the affidavit, by police confirmation of Duncombe's identity by obtaining and showing the CRI a driver's license photograph of Duncombe. The CRI confirmed that the picture was of Duncombe. Police further corroborated the CRI's tip by conducting a controlled-buy at the home where the CRI said Duncombe resided. Corroboration of information, even minor details, provided by the CRI adds further credence to the informant's tip. *State v. McCloskey*, 453 N.W.2d 700, 704 (Minn. 1990). There was enough information in the affidavit for the judge to make an independent determination regarding the reliability of the CRI.

Duncombe next points to the absence of specifics in the application regarding the controlled buy. He notes that the warrant and supporting affidavit lack information regarding the type of controlled substance purchased or how police confirmed that a controlled substance had indeed been purchased. But Duncombe fails to cite any authority for the proposition that such a controlled buy cannot provide support for a probable-cause finding. In *Holiday*, this court concluded that a controlled buy may corroborate an informant's tip even when the controlled buy yields no controlled substance. 749 N.W.2d at 842-843. In that case, a CRI went to the door of Holiday's home and asked Holiday for

6

drugs. *Id.* at 837-38. Holiday told the CRI that he did not know the CRI and would not sell the CRI anything. *Id.* at 838. This court concluded that because Holiday's comment indicated that Holiday would have sold the CRI narcotics if he had known the CRI, the statement corroborated the report of a different informant, who told police Holiday was selling drugs out of the home. *Id.* at 837, 843.

In this case, there are more specifics regarding the controlled buy than in *Holiday*. Police searched the CRI and the CRI's vehicle for money, drugs, and other contraband. Police then provided the CRI with a specific amount of U.S. currency which they had photographed for identification purposes. Police observed as the CRI entered and later exited Duncombe's home. The CRI, who had previously identified Duncombe from a driver's license photograph, returned with a controlled substance and told police that he purchased the substance from Duncombe. Although the affidavit does not state how the officers knew it was a controlled substance or what type of controlled substance it was, the officer who applied for the search warrant is a trained narcotics officer and labeled the substance as a controlled substance in his affidavit.

The reliable informant's tip was based on first-hand information that Duncombe was selling drugs out of his home and was corroborated by a controlled buy at the home. Even if we considered this a close case, "the resolution of doubtful or marginal cases should be largely determined by the preference to be accorded warrants." *Wiley*, 366 N.W.2d at 268 (quotation omitted). The reason for this deference is straightforward: we want to encourage police officers to obtain warrants, not deter them from doing so. *State v. Nolting*, 312 Minn. 449, 456, 254 N.W.2d 340, 345 n.7 (1977). We are further guided by the

7

supreme court's direction to view the affidavit as a whole, rather than examining each component in isolation. *State v. Jenkins*, 782 N.W.2d 211, 223 (Minn. 2010). In light of these principles, we conclude that the warrant and supporting affidavit provided the issuing judge with a substantial basis to find probable cause.

**II.**

Duncombe next argues that the evidence is insufficient to support his conviction. The state maintains that Duncombe is precluded from challenging the sufficiency of the evidence because he proceeded pursuant to Minn. R. Crim. P. 26.01, subd. 4. We agree.

Minn. R. Crim. P. 26.01, subd. 4, allows a defendant to preserve a dispositive pretrial issue for appeal by, among other things, "stipulat[ing] to the prosecution's evidence in a trial to the court" and "acknowledg[ing] that appellate review will be of the pretrial issue, but not of the defendant's guilt, or of other issues that could arise at a contested trial." Minn. R. Crim. P. 26.01, subd. 4(e), (f). An appellant may not challenge sufficiency of the evidence on appeal if he proceeded in the district court under rule 26.01, subd. 4. *State v. Busse*, 644 N.W.2d 79, 88 (Minn. 2002).

In his reply brief and at oral argument, Duncombe claimed that he did not intend to waive his right to appellate review of his guilt, but rather meant to submit to either a "Trial Without a Jury" under rule 26.01, subd. 2, or a "Trial on Stipulated Facts" pursuant to rule 26.01, subd. 3. He acknowledges that aspects of what occurred in district court are consistent with Minn. R. Crim. P. 26.01, subd. 4, and that the district court labeled the matter as a rule 26.01, subd. 4, proceeding in its findings of fact, but argues that because he "did not stipulate to the prosecution's case, he is entitled to appeal the determination of

8

guilt." "The interpretation of the rules of criminal procedure is a question of law that we review de novo."[1] *Dereje v. State*, 837 N.W.2d 714, 720 (Minn. 2013).

The transcript of the proceedings shows that the parties conducted a valid rule 26.01, subd. 4, proceeding. The parties agreed that the pretrial issues relating to Duncombe's warrant challenge were dispositive and that a trial would be unnecessary if Duncombe were to prevail on these issues on appeal. Minn. R. Crim. P. 26.01, subd. 4(c). Duncombe maintained his not guilty plea. *Id.*, subd. 4(b). He waived his right to a jury trial, right to testify, right to question prosecution witnesses, and right to call his own witnesses. *Id.*, subd. 4(d). Duncombe stipulated to the prosecution's evidence, and he acknowledged that the court would consider that evidence and could enter a finding of guilt based on that evidence. *Id.*, subd. 4(e). Duncombe also clearly acknowledged that appellate review would only be of the pretrial issue and not of his guilt or any other issues that could arise at a contested trial. *Id.*, subd. 4(f).

---

[1] The supreme court recently held "that plain error analysis applies to unobjected-to errors committed under Rule 26.01, subdivision 4." *State v. Myhre*, __ N.W.2d __, __, 2016 WL 626048, *6 (Minn. Feb. 17, 2016). Myhre argued that because of errors in his rule 26.01, subd. 4, proceeding, his conviction should be reversed. *Id.* It is unclear whether *Myhre* applies to the instant case. Duncombe does not argue that there were errors in his rule 26.01, subd. 4, proceeding; he instead argues that the parties did not proceed under rule 26.01, subd. 4. The district court, however, did categorize the matter under rule 26.01, subd. 4, in its findings of fact, and Duncombe could have filed an objection to the district court's findings or made a motion to reconsider. He did not. Nevertheless, because the parties have not briefed this issue and because Duncombe's claim fails under either the plain error standard or the more favorable de novo standard, we need not determine the appropriate standard of review. *See State v. Silvernail*, 831 N.W.2d 594, 598 (Minn. 2013) ("We need not resolve the parties' dispute regarding the standard of review because, even under the more favorable standard proposed by Silvernail, the record contains sufficient evidence to support the jury's verdict.").

Duncombe claims that because his attorney argued that he was not guilty and the district court made a finding of guilt and findings of fact, the district court conducted a trial without a jury or a trial on stipulated facts. But rule 26.01, subd. 4, requires the defendant to "maintain the plea of not guilty" and provides that if the district court finds the defendant guilty, "the [district] court must also make findings of fact on the record or in writing as to each element of the offense(s)." *Id.*, subd. 4(b) (h). Duncombe also argues that he did not stipulate to the prosecution's case. Rule 26.01, subd. 4, does not require the defendant to "stipulate to the prosecution's case." Instead, it requires the defendant to "stipulate to the prosecution's evidence in a trial to the court." *Id.*, subd. 4(e). This is exactly what happened in the district court. The prosecution submitted the case to the district court based on a body of evidence stipulated to by the defendant. The district court made a finding of guilt and findings of fact based on that evidence.

Finally, Duncombe argues that a statement by his defense attorney at sentencing that the parties did not do a "*Lothenbach*"[2] but instead conducted "a court trial through police reports" supports his claim. This statement was made nearly three months after the proceeding and has no bearing on what actually occurred. The district court's order clearly designates the matter a rule 26.01, subd. 4, proceeding, and Duncombe did not object to that designation. Our review of the transcript satisfies us that the parties intended to conduct such a proceeding and fully complied with the requirements of the rule. Because

---

[2] The procedure described in rule 26.01, subd. 4, superseded the procedure originally outlined in *State v. Lothenbach*, 296 N.W.2d 854, 858 (Minn. 1980). *State v. Diede*, 795 N.W.2d 836, 842 n.2 (Minn. 2011).

we conclude that Duncombe was tried pursuant to Minn. R. Crim. P. 26.01, subd. 4, he is not permitted to challenge his guilt on appeal.

**Affirmed.**