*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0489**

State of Minnesota,
Appellant,

vs.

Matthew Steven Jacobs,
Respondent.

**Filed July 18, 2016
Reversed and remanded
Connolly, Judge**

Clearwater County District Court
File No. 15-CR-15-554

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Richard C. Mollin, Clearwater County Attorney, Jason P. Steck, Assistant County Attorney, Bagley, Minnesota (for appellant)

Drake D. Metzger, Metzger & Nyberg, LLC, Minneapolis, Minnesota (for respondent)

Considered and decided by Cleary, Chief Judge; Connolly, Judge; and Toussaint,

Judge.*

_____

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**CONNOLLY**, Judge

Appellant the State of Minnesota challenges the district court's finding that an application for a warrant was deficient and exclusion of evidence on that basis. Because we see no significant deficiency in the warrant application that would justify exclusion of the evidence, we reverse and remand.

## FACTS

In 2015, an investigator in Minnesota received a report that L.I., then 12 and staying in Michigan, had disclosed that, when she was 11, respondent Matthew Jacobs, the neighbor of a family friend, touched her and had sex with her at his trailer house in Minnesota. The investigator later received information that respondent was a neighbor of a close family friend whom L.I. visited, that respondent had told L.I. she could come inside his house, and that respondent then began touching L.I., fully undressed her, had intercourse with her, and told her not to tell anyone because he could go to jail.

The investigator obtained three recorded statements: one from S.R., the close family friend of L.I.; one from F.R., S.R.'s 12-year-old daughter and a friend of L.I.; and one from A.P., another 12-year-old friend of L.I. who is also respondent's niece.

S.R. said: (1) he knew and had worked with respondent; (2) respondent rented the trailer next to his trailer; (3) L.I. and S.R.'s daughter, F.R., went to respondent's house regularly to see respondent's ferret; and (4) respondent messaged A.P., his 12-year-old niece, saying she was hot and asking for pictures.

F.R. said: (1) she and L.I. were best friends; (2) when L.I. went to respondent's residence, respondent touched her breasts under her clothes, and L.I. told F.R. she did not like what respondent was doing; and (3) respondent's residence was a trailer house next door to S.R.'s trailer house.

A.P. said: (1) she and L.I. are close friends; (2) L.I. told her that L.I. and respondent had "done stuff," i.e., had sex, but later said she was joking; (3) respondent had asked F.R. and L.I. for pictures, including nude pictures, through text messaging on his phone; (4) respondent had texted her that she was the most beautiful girl her age and the most important person in his life; and (5) respondent's residence was a trailer house next door to S.R.'s trailer house.

The investigator included reports on these interviews in the affidavit he filed with an application for a warrant to search a premises described as "a single wide trailer house, yellow in color with white trim, located at the address of 35340 Tower Avenue SW, Bagley, MN 56621." The warrant application did not include S.R.'s address or state that the premises for which the warrant was sought was respondent's residence.

The investigator said he believed 12 specified items of "property and things" would be found at the premises. The items included computer systems; media in whatever form; personal electronic devices; data that may show the receipt, possession, transmission or distribution of child pornography; proof of residency and documentation relating to the Internet, including bills from an Internet service provider; camera equipment, videotapes or other items that could be used to possess, produce, or distribute child pornography; and

depictions of minors under age 18 engaged in or simulating prohibited sexual acts or exhibiting nudity.

The investigator applied for the warrant on the grounds that: (1) the items were used as a means of committing a crime; (2) the possession of the items constituted a crime, (3) the items were in the possession of a person who intended to use them to commit a crime, and (4) the items were evidence tending to show that a crime had been committed or that a particular person had committed a crime. The investigator also said that he knew respondent had a Facebook page and therefore needed an electronic device connected to the Internet and that he wanted a search warrant "to access the electronic devices maintained and/or utilized by [respondent] for the purpose of maintaining and/or collecting of photographs of underage females for either personal gratification or trade."

The search warrant was issued and executed. Respondent was charged with 14 counts of possession of pornographic work involving minors based on items found during the search. He moved to suppress the evidence found during the search on the ground that the affidavit for the search warrant did not establish a nexus between the items sought and any criminal activity. In the memorandum supporting the motion to suppress, respondent noted that "[t]he application [for the warrant] requested to search [for] a wide array of items at [respondent's] residence;" respondent did not state or even imply that the premises for which the warrant was sought was not actually his residence. However, his motion to suppress was granted by the district court on the ground that there was "no indication

4

whatsoever that the trailer home identified in the warrant application ha[d] anything to do with [respondent] or his criminal conduct."[1]

The state appeals, arguing that the investigator's affidavit, describing acts alleged to have been perpetrated by respondent that required items and equipment a perpetrator would be likely to keep at his residence, established a nexus between respondent's alleged criminal activity and the trailer house whose appearance and location were set out on the search warrant application, even though neither document stated that the trailer house was in fact respondent's residence.

## D E C I S I O N

When reviewing pretrial orders on motions to suppress evidence, this court independently reviews the facts and determines, as a matter of law, whether the district court erred in suppressing or not suppressing the evidence. *State v. Holiday*, 749 N.W.2d 833, 838 (Minn. App. 2008). To appeal from a pretrial suppression order, the state must clearly and unequivocally show that (1) the order will have a critical impact on the state's ability to prosecute successfully and (2) the order constituted error. *Id.* at 838-39. It is undisputed that the order here had a critical impact on the state's ability to prosecute respondent.

A lawful search requires a warrant issued by a neutral and detached magistrate after a finding of probable cause. *Id.* This court does not conduct de novo review of whether the search warrant is supported by probable cause; it rather gives great deference to the

---

[1] It does not appear that respondent ever made this argument in support of his motion to dismiss.

magistrate's finding of probable cause and limits its review to ensuring that the magistrate had a substantial basis for finding probable cause. *Id.* The appropriate test for probable cause is a totality-of-the-circumstances test, and courts are explicitly advised not to review each component of an affidavit in isolation because a collection of pieces of information that would not be substantial considered separately may create sufficient probable cause when considered collectively. *Id.* "[C]ourts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than commonsense, manner; the test of probable cause is met if the affidavit sets forth competent evidence sufficient to lead a reasonably prudent [person] to believe that there is a basis for the search." *State v. Bagley*, 286 Minn. 180, 192, 175 N.W.2d 448, 456 (1970). Finally, "the resolution of doubtful or marginal cases should be largely determined by the preference to be accorded warrants." *Holiday*, 749 N.W.2d at 840 (quotation omitted).

In light of this preference, and on the particular facts before us, we conclude that the affidavit provided probable cause to issue a search warrant for respondent's residence and reverse the granting of the motion to suppress the evidence obtained from the search. Here, four people, namely the victim, an adult friend of the victim's family who knew respondent, the friend's daughter, and another of the victim's friends, all of whom knew respondent, identified the location of his residence as the trailer house next door to the trailer house in which the adult friend resided. The physical description of the residence was specific: "a single wide trailer house, yellow in color with white trim." The investigator had been told that respondent asked children for nude photographs using text messaging on his phone and knew that respondent had a Facebook page. The inference that respondent's electronic

6

devices could be found in his residence is supported by common sense. *See State v. Harris*, 589 N.W.2d 782, 788 (Minn. 1999) (upholding probable cause for a warrant in part because "[c]ommon sense permits an inference that such [identifying] documents would normally be found in a person's home"); *State v. Brennan*, 674 N.W.2d 200, 204 (Minn. App. 2004) ("[T]he issuing judge [of a search warrant] is entitled to draw common-sense and reasonable inferences from the facts and circumstances set forth in an affidavit."), *review denied* (Minn. Apr. 20, 2004).

*Brennan* affirmed the determination that probable cause for a search warrant of an individual's home existed when "an affiant's training and experience" created the nexus between an individual's child-pornography crimes and the home. *Id.* "In the context of child-pornography-related crime, federal courts have concluded that an affiant's training and experience could support a finding of probable cause." *Id.* Here, the investigator heard from four people that respondent used electronic devices to obtain nude photographs of minors. This information created a nexus between respondent's trailer house and his crimes. The fact that one page of the document referred to the trailer house by its address and another page referred to the trailer house as respondent's residence supported the inference that the trailer house for which a warrant was sought was respondent's residence.

Respondent relies on *State v. Souto*, 578 N.W.2d 744, 748-49 (Minn. 1998) (reversing conviction based on evidence obtained during search for which the warrant lacked probable cause). But *Harris* distinguishes *Souto*, and the *Harris* distinction also applies here: in *Souto*, "the state's warrant application failed to show that Souto was anything more than a casual user of drugs and contained no timely information that Souto

7

had ever possessed or used drugs at her residence." *Harris*, 578 N.W.2d at 789 (citing *Souto*, 578 N.W.2d at 748). Here, the warrant application contained information from four sources indicating that respondent solicited nude photos of children using electronic devices, and common sense permitted the inference that those devices would be found in respondent's home.

The district court's suppression of the evidence on the ground that there was no nexus between the trailer house identified by address in the application and the trailer house identified as the probable location of evidence in the affidavit violated the directive that "courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than commonsense, manner." *Bagley*, 286 Minn. at 192, 175 N.W.2d at 456. However, by so ruling we note that, in the future, not connecting a responsible party to a specific address in a search warrant application may well lead to a suppression of evidence collected. In this case, reasonable inferences from the facts and circumstances set forth in the affidavit identify the address listed as respondent's residence.

**Reversed and remanded.**