*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2016).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0606**

State of Minnesota,
Respondent,

vs.

Christopher Davis Schultz,
Appellant.

**Filed January 17, 2017
Affirmed
Larkin, Judge**

Hennepin County District Court
File No. 27-CR-14-32912

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Kelly O'Neill Moller, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Jodi Proulx, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Hooten, Presiding Judge; Peterson, Judge; and Larkin, Judge.

UNPUBLISHED OPINION

**LARKIN**, Judge

Appellant challenges his convictions of first-degree controlled-substance crime, arguing that the district court erred by denying his motion to suppress the evidence against him. We affirm.

**FACTS**

In November 2014, police officers executed a search warrant at a house located in New Germany, Minnesota. The officers observed evidence of a recently dismantled marijuana-grow operation including equipment, wiring, ventilation, temperature-control systems, dried marijuana clippings, and paraphernalia. The officers also found receipts connecting appellant Christopher Davis Schultz to the operation.

The house's residential tenant, J.H., was present when the search warrant was executed. Officers interviewed J.H. regarding the grow operation. J.H. admitted his involvement. He also suggested that Schultz financed the operation, visited the house weekly to check on the operation, and received several pounds of marijuana every few months in exchange for financing the operation. J.H. described Schultz, his residence, and his vehicle to the officers.

Law enforcement confirmed J.H.'s description of Schultz's residence and vehicle. Officers began surveillance of Schultz's property the same day that they executed the warrant at J.H.'s home. When Schultz left his residence that day, an officer stopped his vehicle and arrested him based on his suspected involvement in J.H.'s marijuana-grow operation. The officer searched Schultz incident to arrest and found a baggie of suspected

cocaine. Later, the police searched Schultz's car and found multiple bags of suspected cocaine weighing approximately 160 grams. Respondent State of Minnesota charged Schultz with two counts of first-degree controlled-substance crime based on the narcotics recovered from his person and vehicle.

Schultz moved to suppress the narcotics, arguing that the police lacked probable cause to arrest him. The district court held an evidentiary hearing on the motion and concluded that there was probable cause to believe that Schultz "was committing a crime in the form of participating in a marijuana grow operation and receiving 3-5 pounds of marijuana." The district court further concluded that the subsequent searches of Schultz's person and vehicle were valid.

Schultz agreed to a stipulated-facts trial under Minn. R. Crim. P. 26.01, subd. 3, and the district court found him guilty of two counts of first-degree controlled-substance crime. This appeal follows.

**D E C I S I O N**

**I.**

Schultz contends that his "convictions should be reversed because the district court erred when it found probable cause existed to arrest [him] and that the subsequent search of his person and vehicle was valid." He argues that his warrantless arrest was unlawful and that the evidence against him should have been suppressed as the fruit of his unlawful arrest. *See Wong Sun v. United States*, 371 U.S. 471, 488, 83 S. Ct. 407, 417 (1963) (stating that if "evidence to which instant objection is made has been come at by exploitation of"

3

illegal police conduct, the evidence may not be used against the subject of the illegal conduct (quotation omitted)).

The Fourth Amendment of the U.S. Constitution and article I, section 10 of the Minnesota Constitution protect "against unreasonable searches and seizures." "Under both the federal and state constitutions, subject only to a few specifically established and well-delineated exceptions, searches or seizures conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable." *State v. Dickey*, 827 N.W.2d 792, 798 (Minn. App. 2013) (quotations omitted). "A well-established exception to the warrant requirement permits police officers to arrest a felony suspect without an arrest warrant in a public place provided they have probable cause." *Id.* (quotation omitted).

"Probable cause exists when a person of ordinary care and prudence, viewing the totality of circumstances objectively, would entertain an honest and strong suspicion that a *specific* individual has committed a crime." S*tate v. Onyelobi*, 879 N.W.2d 334, 343 (Minn. 2016) (quotation omitted). A finding of probable cause requires "more than mere suspicion but less than the evidence necessary for conviction." *Id.* (quotation omitted). We review a determination of probable cause for a warrantless arrest de novo. *State v. Horner*, 617 N.W.2d 789, 795 (Minn. 2000).

The district court's probable-cause determination was largely based on J.H.'s statements to the police regarding the grow operation. J.H. told the police that the operation had been in existence for "about a year and a half." J.H. admitted that he had recently dumped his marijuana crop in a river.

The police asked J.H. about Schultz:

> Q: Just a question, can you tell us who is Christopher Schultz, too?
> A: Yeah I sold him a little bit, nothing too sizeable. Personal amounts.
> Q: Like what's personal amounts?
> A: Quarter, half pound.

The police pressed J.H. for details regarding Schultz's involvement in the operation.

They asked:

> Q: Ok, so when you give Chris [Schultz] how much for three months? Just tell me a number.
> A: How much[?]
> Q: Three pounds, four pounds, five pounds?
> A: Probably two or three.
> Q: Ok, so let's say three. When you're giving him three pounds every three months, that's what I'm gonna call it, not five, what are you getting in return for it? Or what's coming off your tab?
> A: That amount.
> Q: $3200? Per pound?
> A: Yeah.

Although J.H. never expressly implicated Schultz in the grow operation, J.H.'s responses suggested that Schultz was involved:

> Q: Ok seeing how you meet with [Schultz] every three months, give or take, how often do you stay in contact with him? Is it daily? Is it weekly?
> A: It's sporadic I mean.
> Q: Again, if you had to pick a number is it weekly, daily, monthly?
> A: Weekly.
> Q: Ok, how do you get in contact with [Schultz]?
> A: Just call him or text him.
> Q: Good. That's a good answer. What number do you have for [Schultz]? Is it in your cell phone?
> A: Yeah.
> . . . .

5

Q: Ok. And who's Michael?
A: Michael?
Q: Mike and [Schultz] together? Mike and [Schultz] come to pick up?
A: No I don't know any Mike.
Q: It's your writing man. Mike and [Schultz] will be here when (Inaudible) Might come Wednesday night.
A: Oh oh, that's ah a friend of Michael and . . . I probably haven't talked to him in a year and a half.
Q: Is he a friend of yours or a friend of [Schultz's] or both?
A: Ah both
Q: Is he part of [Schultz's] op?
A: No.
Q: Ok, so now we got your relationship with [Schultz], we got a way to contact [Schultz], we know you meet him and deliver every three months. How often does he stop by and check up upon you?
A: Um I mean I mean sporadically maybe twice a week, maybe one a week, maybe.
Q: Just to check on you or the crop or both, right?
A: Just to hang out and.
Q: Check on the crop, true?
A: No, just to hang out I mean we're friends you know?
Q: Would it be safe to say that while you're hanging out every time he comes, he takes a quick glimpse at the crop?
A: (inaudible).

At the hearing on Schultz's motion to suppress, the state asked one of the officers who questioned J.H. about J.H.'s inaudible response. The officer testified that J.H. nodded affirmatively when the officer asked if Schultz checked on the crops when Schultz visited J.H.

The district court's probable-cause determination was also based on receipts found during the search of J.H.'s residence. One receipt was for a honey-bee extractor. The receipt contained Schultz's name and home address. An officer testified that the extractor is "commonly used—by people who produce marijuana to also extract THC from the

6

marijuana plants, and create—a wax or hash type substance." Another receipt was for 12 1000-watt bulbs. This receipt contained Schultz's address and the name "Charlie Schultz." An officer testified that the bulbs were consistent with the kind used in a growing operation. A third receipt was for building equipment from Menards. The receipt contained Schultz's cellphone number and the name "Chris Scholtz." An officer testified that the equipment purchased was consistent with a grow operation "and some of the modifications that [the officers] saw at the house." The purchase dates on the receipts predated Schultz's arrest by approximately one year to one-and-a-half years, which, according to J.H., was when the grow operation was in existence.

When viewed objectively, J.H.'s statements suggesting that Schultz was involved in the grow operation and the receipts found at J.H.'s residence connecting Schultz to the operation would cause an ordinary and prudent person to entertain an honest and strong suspicion that Schultz was involved in the operation.

Schultz argues that J.H.'s "tip was unreliable and failed to establish probable cause for a warrantless arrest." Where a probable-cause determination is based on an informant's tip, the informant's veracity and the basis of knowledge are considerations under the totality-of-the-circumstances test. *State v. Albrecht*, 465 N.W.2d 107, 108 (Minn. App. 1991). "Recent personal observation of incriminating conduct has traditionally been the preferred basis for an informant's knowledge." *State v. Wiley*, 366 N.W.2d 265, 269 (Minn. 1985). An informant's reliability may be established by sufficient police corroboration of the information supplied, and corroboration of even minor details can "lend[] credence" to the information where the police know the informant's identity. *State*

7

*v. Holiday*, 749 N.W.2d 833, 841 (Minn. App. 2008). Also, the fact that an informant makes a statement against his or her own interest "is of some minimal relevance in a totality-of-the-circumstances analysis." *State v. McCloskey*, 453 N.W.2d 700, 704 (Minn. 1990). Statements against interest enhance reliability because "'[p]eople do not lightly admit a crime and place critical evidence in the hands of the police in the form of their own admissions.'" *State v. Wiberg*, 296 N.W.2d 388, 395 & n.7 (Minn. 1980) (quoting *United States v. Harris*, 403 U.S. 573, 583, 91 S. Ct. 2075, 2082 (1971)).

Here, J.H.'s knowledge is based on his recent personal observation of incriminating conduct. He reported that Schultz came to his home weekly, inspected the grow operation, and received three pounds of marijuana from the operation every three months. J.H.'s suggestion that Schultz was involved in the grow operation was corroborated by the receipts connected to the operation and to Schultz. Lastly, J.H.'s admissions that his home housed a marijuana-grow operation for the last year and a half, and that he dumped the resulting marijuana crop in a river, are statements against interest that enhance J.H.'s reliability.

In sum, the totality of the circumstances established J.H.'s reliability for the purpose of a probable-cause determination. J.H.'s statements established probable cause to believe that Schultz had been involved in a recently dismantled marijuana-grow operation with J.H., from which Schultz received three pounds of marijuana every three months. Thus, there was probable cause to believe that Schultz had violated Minn. Stat. § 152.096, subd. 1 (2014), which provides that "[a]ny person who conspires to commit any act prohibited by this chapter, except possession or distribution for no remuneration of a small amount of

marijuana as defined in section 152.01, subdivision 16, is guilty of a felony." *See* Minn. Stat. § 152.01, subd. 16 (2014) (defining small amount of marijuana as 42.5 grams or less). Because Schultz's arrest was lawful, the district court did not err by refusing to suppress evidence obtained as the result of his arrest.

## II.

Schultz also contends that his warrantless arrest "was unconstitutional because there was no identified felony for which [he] was arrested." He argues that the "police never identified the requisite felony offense prior to [his] arrest." He concludes that "[b]ecause there was no identified felony offense, police did not have probable cause to believe [Schultz] had committed a felony and [his] warrantless arrest was unconstitutional."

It is not clear whether Schultz is arguing that before the police arrest a person without a warrant in a public place, they must somehow pronounce or document the suspected felony offense, or that there was not probable cause to believe that Schultz had committed a felony-level offense.[1] If the former, Schultz does not provide supporting legal authority for the argument, and we do not discern obvious prejudicial error. We therefore do not analyze the issue. *See State v. Wembley*, 712 N.W.2d 783, 795 (Minn. App. 2006) ("An assignment of error in a brief based on mere assertion and not supported by argument or authority is waived unless prejudicial error is obvious on mere inspection." (quotation

---

[1] This case was submitted without oral argument.

omitted)), *aff'd*, 728 N.W.2d 243 (Minn. 2007).  If the latter, we reject the argument for the reasons in section I of this opinion.

**Affirmed.**